No. 14930

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LEOLA VAN ATTA,

Plaintiff and Respondent,

vs.

CLAIR SCHILLINGER,

Defendant and Appellant.

Appeal from:  District Court of the Seventh Judicial District,
In and for the County of McCone.
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

McDonough, Cox & Simonton, Glendive, Montana
Dale Cox argued, Glendive, Montana
Habedank, Cumming and Best, Sidney, Montana
Otto Habedank argued, Sidney, Montana

For Respondent:

Baxter Larson argued, Wolf Point, Montana

Submitted:  June 20, 1980

Decided:  March 20, 1981

Filed:  MAR 20 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant Clair Schillinger appeals from a judgment of the McCone County District Court granting specific performance of an option agreement to plaintiff Leola Van Atta, and ordering the defendant to convey the property involved to the plaintiff.

Defendant raises several issues. He first contends that the writing involved was not an option agreement because it failed to meet the essential requirements for the validity of a contract. In particular, he contends that there was a lack of consent, and that the consideration was legally insufficient. Second, he contends that the tender and demand made under the option agreement was not a legal tender. In particular, he contends that the claimed tender was actually a counteroffer and therefore, he was at liberty to ignore the counteroffer or to impose other terms in response to this counteroffer. Third, he contends that because the terms were not definite enough, specific performance could not be granted. Fourth, and last, he contends that the court erred in excluding testimony under the parol evidence rule. He argues that his testimony was offered to challenge the validity of the claimed option agreement, and therefore that it was admissible as an exception to the parol evidence rule. We affirm.

This case arose when a family-owned farming corporation decided to liquidate. Plaintiff, Leola Van Atta, and defendant, Clair Schillinger, are brother and sister. Since 1954, they and their brother and sisters owned equally all the stock of Paul Schillinger, Inc., a farming corporation. The brother is Clyde Schillinger, and the sisters are Cleon Sass and Thelma O'Donnell.

In December 1973, the owners began discussions on the dissolution and liquidation of the corporations. On May 19, 1974, all the shareholders, except Thelma O'Donnell, attended a corporate meeting in Circle, Montana. The disputed option agreement was discussed and signed at that time.

During the meeting, defendant Schillinger, and Leola and James Van Atta (Leola's husband) discussed the purchase of a half-section of farmland located in McCone County. This property was owned by defendant Schillinger individually, and was not a corporate asset. A handwritten memorandum on the sale of the land was included in the corporate minutes and it was signed by all the shareholders, either in person or by proxy. The writing gave plaintiffs Leola and James Van Atta an exclusive option to purchase the land for $200 per acre. The option was not to be exercised until after the 1976 farming season and was to expire January 10, 1977.

As consideration, the writing recited the various agreements for disposition of and payment for the land held in the name of the family corporation. The option was, as the trial court found, also supported by additional consideration in the form of Leola Van Atta's participation in the agreed division of the family corporation as well as by the actual payment of $1.00 by James Van Atta to Schillinger.

On November 23, 1976, plaintiffs James and Leola Van Atta sent a document to defendant Clair Schillinger labeled "Tender and Demand." Its purpose was to exercise the May 19 option to purchase the land mentioned in the option agreement. This document stated that $64,000 ($200 per acre) was on deposit at the Citizens First National Bank of Wolf Point, and that the bank would immediately pay that sum to Clair Schillinger when he delivered a joint tenancy warranty deed to James and Leola Van Atta.

-3-

The first response from Clair Schillinger was on December 7, 1976, when he wrote James and Leola Van Atta. He questioned the validity of the option but also indicated his willingness to sell the land--with added terms: the reservation of mineral rights, an installment payment plan, a $14,000 increase in the purchase price (representing the value he placed on the building located on the land); and that the crops planted during the 1976 season would go two-thirds to the tenant actually farming the land, and one-third to himself. James and Leola Van Atta did not answer this letter but instead filed suit on January 4, 1977, seeking specific performance of the option agreement. They also asked for attorney fees because they claimed defendant Clair Schillinger acted in bad faith in backing out of the option agreement. James Van Atta died before trial of the case.

Trial was held on November 21, 1978, and the trial court entered its findings and conclusions on May 14, 1979, holding that an enforceable option contract existed between the Van Atta's and Schillinger. However, the court denied attorney fees because he found that defendant Schillinger had not acted in bad faith.

Defendant first attacks the judgment by claiming that the corporate minutes signed on May 19, 1974, did not create an enforceable option contract. He contends he did not consent to the agreement acting in his individual capacity and that the consideration was legally insufficient. The trial court found consent. It also found that the $1.00 paid by Leola Van Atta, together with her participation in the dissolution of the corporation and disposition of the corporate lands, was sufficient consideration.

-4-

The actual payment of $1.00 and the actual participation in the family corporate dissolution was sufficient consideration for the agreement. This consideration falls within the meaning of consideration contained in section 28-2-801, MCA. We note also that even under defendant's argument, the memorandum would at least be construed as an offer by him, and that offer remained until either withdrawn or acted upon. Once the Van Atta's acted on the offer, a binding agreement resulted. See, Raiche v. Morrison (1913), 47 Mont. 127, 130 P. 1074, 1075; and Ide v. Leiser (1890), 10 Mont. 5, 24 P. 695, 696.

Before the May 19 agreement, the owners of the family corporation had agreed to transfer certain assets to certain parties. However, Leola Van Atta could not assert any right to the transfer as such because there was never any agreement in writing. It was not until the May 19 agreement that a written agreement was signed that entitled Leola Van Atta to any money or any land as a result of the corporation dissolution.

Defendant argues that even though Leola Van Atta might have intended to sign a contract by signing the corporate minutes, he did not intend to sign a contract, and therefore mutual assent is lacking. He also argues that the parties had been negotiating after the May 19 meeting on the terms of the sale, but that they could not agree on the terms. The trial court found, on the other hand, that he intended to sign a contract. The court noted that defendant was a director of the Sidney Federal Land Bank and certainly could not claim ignorance about the requirements for land contracts. Also, Leola Van Atta testified that the May 19 writing incorporated all the terms of the agreement, that she regarded it as binding, and that they discussed no other terms beyond

those contained in the option agreement. Although the evidence conflicted, the trial court clearly chose to believe plaintiffs' version.

Under the second issue, defendant lumps together several attacks on the actual terms of the "tender and demand" sent to him by the plaintiffs. He argues that the plaintiffs did not accept the terms of the option agreement because it was conditioned on terms not mentioned in that agreement. In the tender, the plaintiffs demanded that Schillinger supply a warranty deed, and that this deed be signed by defendant's wife. However, the option agreement was silent on the kind of deed, and there was no requirement that defendant's wife also signed the deed. Also, the tender and demand asked that the deed be deposited with the Citizen's First National Bank in Wolf Point, that bank which also held the $64,000 in payment. Defendant argues that because no place of payment was specified in the option agreement, that payment at his own residence is implied. Finally, defendant argues that although $64,000 was deposited in the Citizen's First National Bank, it was not available to him because it was actually in a joint passbook savings account in the name of the plaintiffs, and subject to withdrawal only by the written request of the plaintiffs. Defendant contends that all of these conditions actually amount to a counteroffer rather than an acceptance of an option agreement. He, therefore, argues that it was proper for him in his December 7 response, to insist on additional terms before he would sell the land. We hold, however, that the tender and demand created a binding agreement to convey the land.

Matters which are subsidiary, collateral, or which do not go to the performance of the contract, are not essential

and do not have to be expressed in the contract. Steen v. Rustad (1957), 132 Mont. 96, 313 P.2d 1014, 1020.

It is true that the plaintiffs had no right to obtain a warranty deed, and they had no right to obtain the signature of defendant's wife on the deed. But we do not regard this demand as a fatal variance from the terms of the option agreement. The option agreement did not specify the kind of deed, and in such case, it is presumed that a fee simple is intended to pass. See, section 70-20-301, MCA. In Morris v. Goldthort (1945), 390 Ill. 147, 60 N.E.2d 857, the court held that the demand for a warranty deed, where one was not specified in the agreement, was a material variance of an option agreement. This may be true in a particular case, but we do not adopt such a hard and fast rule here. When defendant Schillinger responded on December 7, he did not object to plaintiffs' demand for a warranty deed. Although the court could not order that plaintiffs get a warranty deed, we have no doubt that a court of equity can properly grant specific performance by ordering only that a deed passing the fee simple estate, without the warranties, pass by the terms of the option agreement.

Defendant Schillinger did mention in his December 7 response that his wife did not sign the option agreement. Undoubtedly, the plaintiffs were proceeding with an abundance of caution when they asked also that defendant's wife sign the deed. They were concerned, as all careful parties would be, that defendant's wife would perhaps claim an interest in the land, and therefore, wanted to eliminate this possibility. We believe, however, that a court of equity could properly order that only defendant Clair Schillinger sign the deed to the plaintiffs. We hold the demand that defendant's wife also sign the deed is not a material variance from an option agreement such as to defeat specific performance.

Nor can we say that the plaintiffs were not ready, willing and able to perform because the $64,000 was in their name in a joint passbook savings account, which, by the rules of the bank, the bank acted only as the plaintiffs' collecting agent. In their "tender and demand" the plaintiffs asked that the deed be deposited with this same bank. Although there may have been some minor mechanical problems involved in the transfer of the money to the defendant upon his depositing a deed, there can be no doubt that the plaintiffs demonstrated their intent to be bound by the option agreement, and were ready, willing and able to pay $64,000 to the defendant.

Defendant next argues that specific performance can be defeated because the plaintiffs should have sent the $64,000 to his home. He relies on law stating that when no place of payment or delivery is specified, it is implied that payment is to be at the seller's home. He cites 3 A.L.R.2d 256, 263. He therefore argues that an acceptance which specifies a different place of payment does not create a contract because it is a conditional acceptance. He cites 77 Am.Jur.2d Vendor and Purchaser, § 16. Plaintiff, on the other hand, cites section 28-1-1206, MCA, and contends by this statute that when no place of performance is specified, the offer of performance can be made at the debtor's option "wherever the person to whom the offer ought to be made can be found." Defendant Schillinger lived near Wolf Point, Montana, and the deposit was made in a bank at Wolf Point, Montana. Clearly, the plaintiffs made a most reasonable effort to find the defendant and tender the $64,000.

Defendant Schillinger next contends that the terms of the option agreement are so indefinite that specific performance

cannot be granted as a remedy. As already stated, the place of payment, when the contract is silent, is wherever the seller (creditor) can be found. Section 28-1-1206(2), MCA. The option agreement expressly provides for the manner of payment and the amount of payment: cash at $200 per acre. Further, although the interest to be conveyed is not mentioned in the option agreement, section 70-20-301, MCA, provides that where the contract or terms of the grant are silent, a fee simple is presumed to be intended to pass. Surely, defendant Schillinger did not contend that any less interest should pass, and if he so intended, he did not prove it.

Finally, defendant Schillinger contends the judgment must be reversed because the trial court erroneously excluded his testimony on three important matters going to the validity of the contract. Defendant contends the trial court excluded testimony that: he had no authority to sign the agreement; he had no intent to sign a contract; and, whether anyone directed that a writing be made. The trial court excluded this offered evidence at one point in the trial because it would violate the parol evidence rule. Defendant, however, contends that the offered testimony, because it goes to the validity of the contract, constitutes an exception to the parol evidence rule, citing section 28-2-905(1)(b), MCA. While we agree with defendant's analysis of the law, there was no prejudice here because such testimony was admitted later in the trial. Defendant testified that he signed the writing only in his capacity as a shareholder, that he intended only to sign corporate minutes rather than a contract, and that no one directed that the discussions be reduced to writing. For this reason, we see no prejudice in the earlier ruling of the trial court. The testimony was admitted, although the trial court clearly rejected it.

-9-

The judgment of the District Court ordering specific performance is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Peter G. Meloy,
District Judge, Sitting
For Mr. Justice John C.
Sheehy

-10-