No. 91-602

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

JAMES B. HETHERINGTON, SUSAN K. SPILMAN,
and ANITA EDDINGS, Co-Personal Representatives
of the Estate of KATHRYN E. HETHERINGTON,
Deceased,

     Plaintiffs and Respondents
                    and Cross-Appellants,

     -v-

FORD MOTOR COMPANY, a Delaware Corporation,

     Defendant and Appellant
                    and Cross-Respondent.

---

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and for the County of Flathead,
                 The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          John D. Stephenson, Jr. (argued), Jardine,
          Stephenson, Blewett & Weaver, Great Falls, Montana;
          John M. Thomas, Office of the General Counsel Ford
          Motor Company, Dearborn, Michigan, Of Counsel for
          Ford Motor Company

     For Respondent:

          Erik B. Thueson, Thueson Law Office, Helena, Montana

---

Argued:    November 19, 1992

Submitted:    February 17, 1993

Decided:    March 30, 1993

FILED

Filed:  MAR 3 0 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Ford Motor Company (Ford) appeals from a judgment rendered by the District Court of the Eleventh Judicial District in favor of respondents, the husband and children (Hetheringtons) of the deceased Kathryn Hetherington. We reverse.

In May of 1987 Kathryn Hetherington was severely injured when she was run over by her own automobile, and as a result of these injuries she subsequently died. Hetheringtons retained counsel to represent them against the manufacturer of the car, Ford Motor Company, and against the dealer which sold them the vehicle, Ronan Auto Body Sales (Ronan). Settlement negotiations went on for over two years. Finally, in August of 1989, it appeared as if a settlement agreement had been reached. Ford offered to pay Hetheringtons $175,000 and Ronan offered to pay $10,000. This offer was in exchange for a full and final release of all claims by the Hetheringtons. Hetheringtons met with their counsel and agreed to the offer and gave him authority to accept. Immediately after this meeting counsel for the Hetheringtons sent the following letter to the agent negotiating on behalf of Ford and Ronan:

> Please be advised that my clients have decided to accept your clients' combined offer of settlement in the amount of $185,000. Of the total amount, $10,000 will be contributed by Ronan Auto Body and $175,000 will be contributed by Ford Motor Company . . . . [E]ach of you will be sending me settlement drafts and the appropriate releases.

Counsel for Hetheringtons asked for "drafts and settlement documents within 10 days." Four days after their counsel sent this letter the Hetheringtons wrote a letter to their counsel indicating

2

that they were discharging him and his firm. Hetheringtons further indicated that they were not interested in the settlement which had been offered and did not wish him to negotiate further on their behalf. Hetheringtons retained different counsel and later a suit was filed by them against Ford. Hetheringtons also sued Ronan, however Ronan settled prior to trial and is not a party to this appeal. Hetheringtons contend it was their understanding that "our right to bring the claim . . . would not be lost until that written settlement agreement was formally approved and executed."

Ford alleged as an affirmative defense that Hetheringtons had agreed to compromise and settle their claims with Ford prior to filing the action. Ford also asserted a counterclaim seeking specific performance of the alleged settlement agreement. Prior to trial Ford moved for summary judgment on its affirmative defense and counterclaim. The District Court denied Ford's motion for summary judgment on the basis that there remained a question of fact as to whether the parties intended to be bound in the absence of a written signed agreement. Hetheringtons also filed a motion for summary judgment which was denied.

Ford's counterclaim was bifurcated from the main wrongful death suit and tried first. During this trial the District Court indicated there was not a question of fact as to the parties' intention to be bound, but did direct a verdict in favor of the Hetheringtons on the basis that no meeting of the minds had occurred concerning what an "appropriate release" provision in the settlement agreement would have included. The District Court

3

certified the judgment as final pursuant to Rule 54(b), M.R.Civ.P., allowing Ford to appeal from the directed verdict.

Ford raises two issues for consideration on appeal:

1. Did the District Court err in refusing to grant Ford's motion for summary judgment on the basis that a question of fact existed as to whether the parties intended to be bound prior to the execution of a signed written agreement?

2. Did the District Court err in granting a directed verdict in favor of Hetheringtons on the grounds that there was no meeting of the minds concerning what constituted an "appropriate release"?

Hetheringtons brought a cross-appeal addressing an additional issue:

3. Whether the District Court should have granted summary judgment in favor of Hetheringtons because the facts showed an incomplete accord and satisfaction?

I

Ford asserts the District Court erred in not granting its motion for summary judgment. The District Court was of the opinion there was a question of fact as to whether the parties intended to be bound prior to signing of a written agreement.

The court based its denial on the affidavit of Susan Spilman, one of the Hetherington children, that it was their understanding and intent that their right to bring a claim would not be lost until a written agreement was reviewed, agreed upon and signed. The court originally felt this created a question of fact as to the intent of the parties to be immediately bound.

4

An agreement is binding if made by an unconditional offer, and accepted unconditionally. Here the attorney's letter, and the conference between the Hetheringtons and their attorney, disclosed no conditions or manifestations of conditional intent.

The alleged intentions of the plaintiffs to be bound only by a written agreement were not disclosed to their attorney or to the other parties. Restatement (Second) of Contracts, § 21 is applicable:

> Neither real nor apparent intention that a promise be legally binding is essential to the formation of a contract, but a manifestation of intention that a promise shall not affect legal relations may prevent the formation of a contract.

The intentions of the parties are those disclosed and agreed to in the course of negotiations. A party's latent intention not to be bound does not prevent the formation of a binding contract. Such a condition, that it will not be effective until signed, must be part of the agreement between the parties. See Hanson v. Oljar (1988), 231 Mont. 272, 277, 752 P.2d 187, 190; Hunt v. S Y Cattle Co. (1926), 75 Mont. 594, 606, 609, 244 P. 480.

We conclude there was not a question of fact as to whether the parties intended to be bound only by a written agreement, reviewed and signed by the Hetheringtons. Summary judgment should have been granted on this issue.

II

Did the District Court err in granting a directed verdict in favor of Hetheringtons on the grounds there was no meeting of the

5

minds as to what constituted an "appropriate release" as set forth in Hetherington's attorney's letter to Ford?

Testimony was taken as to the meaning of those two words. Ford's agent testified he intended it to mean a standard release and he did not know for sure whether a confidentiality clause would be inserted. Hetheringtons introduced evidence of a release which Ford would have requested, containing an indemnification claim and a clause that claims were doubtful. The clause concerning doubtful claims was particularly repugnant to the Hetheringtons. No release was ever prepared or rejected.

The District Court ruled that the two parties did not reach an understanding as to what was considered an "appropriate release," and could not enforce a contract based solely upon the language "appropriate release." The court therefore entered a directed verdict in favor of Hetheringtons.

Section 28-3-201, MCA, provides:

> A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties.

The material elements of this settlement agreement were two:

1. The amount of settlement, $185,000; and
2. The release of all claims.

Ford and Ronan offered to pay $185,000 for a "full and final release of all claims." Hetheringtons accepted and asked for the "appropriate release." Such material elements are capable of being carried into effect and will not violate the intentions of the parties.

We stated in Van Atta v. Schillinger (1981), 191 Mont. 472, 625 P.2d 73:

> Matters which are subsidiary, collateral, or which do not go to the performance of the contract, are not essential and do not have to be expressed in the contract. Steen v. Rustad (1957), 132 Mont. 95, 313 P.2d 1014, 1020.
>
> It is true that the plaintiffs had no right to obtain a warranty deed, and they had no right to obtain the signature of defendant's wife on the deed. But we do not regard this demand as a fatal variance from the terms of the option agreement. The option agreement did not specify the kind of deed, and in such case, it is presumed that a fee simple is intended to pass. See, section 70-20-301, MCA. In Morris v. Goldthorp (1945), 390 Ill. 186, 60 N.E.2d 857, the court held that the demand for a warranty deed, where one was not specified in the agreement, was a material variance of an option agreement. This may be true in a particular case, but we do not adopt such a hard and fast rule here. When defendant Schillinger responded on December 7, he did not object to plaintiffs' demand for a warrant deed. Although the court could not order that plaintiffs get a warranty deed, we have no doubt that a court of equity can properly grant specific performance by ordering only that a deed passing the fee simple estate, without the warranties, pass by the terms of the option agreement.

Van Atta, 191 Mont. at 477.

Similarly here the instrument to be signed by the Hetheringtons need only give Ford a release of all claims. The court acting as a court in equity can grant specific performance by ruling that a simple release of all Hetherington's claims be executed, the form of which it would approve, and dismiss the lawsuit with prejudice. Ford does not have the right to add conditions such as confidentiality of the settlement, indemnification, or doubtfulness of claim, nor do the Hetheringtons have the right to impose such a condition as acknowledgement of

7

liability. The wording of a release under these circumstances is a matter of law.

We conclude the District Court erred in granting the directed verdict on the grounds there was no meeting of the minds as to what constituted an appropriate release.

### III

The cross-appeal brought forward the issue of whether or not the District Court should have granted summary judgment in favor of Hetheringtons because the facts showed an incomplete accord and satisfaction.

This issue raises the question of whether the settlement agreement is an executory accord or a substituted contract. An executory accord is a contract which provides for the acceptance in the future of a stated performance and satisfaction of the antecedent claim. In this case the stated performance in the future would be the payment of $185,000 which would satisfy the claim of Hetheringtons.

However, if the agreement arrived at by the parties is itself accepted as a substitution for an extinguishment of the antecedent claim, then the agreement is a new substituted contract, and the old claim is extinguished and recovery is limited to rights under the substituted contract. See Clark v. Elza (1979), 406 A.2d 922; 6 Corbin on Contracts, § 1268, p. 71 (1962).

Hetheringtons contend the settlement was not a binding settlement because it was an incomplete accord and satisfaction and

therefore an executory accord and is not a legally binding contract until payment is actually made.

This contention does not comply with our statute. Section 28-1-1401, MCA, provides:

> **Accord--definition and effect.** An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled. Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed.

Here the parties are bound to execute but the obligation of Ford under the claim is not extinguished until the accord is completed. An executory accord is an interim agreement and if it is not executed the original obligation remains.

The difference between an executory accord and a substituted contract is in the remedies available upon breach of the contract. In this case if Ford had breached interim contract and did not pay the money, and if it was considered to be an executory accord, Hetheringtons could rescind the contract and continue with their original tort claim; or they could have enforced the interim contract and asked for contract damages. If it were a substituted contract, Hetheringtons could only bring an action for contract damages. See Clark v. Elza, supra, and Warner v. Rossignol (1st Cir. 1975), 513 F.2d 678, 94 A.L.R.2d, p. 516-522.

Usually, the question of whether the agreement is an executory accord or a substituted contract depends on the intention of the parties. However, under the uncontested facts here it does not make any difference because it was the Hetheringtons who breached the interim agreement four days after it was reached, by informing

9

their attorney they were not going through with the agreement. Due to this breach, whether the interim agreement is an executory accord or a substituted agreement is moot because it is Ford which has the option of suing for damages or, as it has done, to ask for specific performance of the contract. We conclude the interim agreement is enforceable and not an incomplete accord and satisfaction.

For reasons stated above in discussing Issues I and II, we find the interim contract is specifically enforceable and that judgment should be granted to Ford on the counterclaim. The District Court is reversed and the cause remanded to the District Court for entry of judgment in favor of Ford, and any further proceedings in conformance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
District Judge Ted L. Mizner sitting
for Justice Terry N. Trieweiler.

10

Justice William E. Hunt, Sr., dissenting.

I dissent. It is clear from testimony of the witnesses and the exhibits that there was not a meeting of the minds regarding the release, and therefore, as the District Judge who was present in court clearly found, no contract existed. It is incredible for the majority to hold that confidentiality, indemnification, and doubtfulness of claims provisions contained in standard releases are not material. At the time of the alleged contract, Ford Motor Company was responsible for drafting the release. Ford's claims adjuster, Martin Simmonsen, the only person who negotiated with the Hetheringtons, admitted that the provisions contained in the release were material to Ford and that the settlement agreement would not be completed until the parties read and understood the agreement, agreed to the terms, and executed the agreement. This was also the Hetheringtons' understanding, as sworn to by Susan Spilman. Finally, the sample release submitted by Ford during discovery would had to have been amended to include a confidentiality agreement to make it consistent with what Ford intended in August 1989.

I would affirm the District Court and deny the motion for summary judgment. I would also affirm the court's granting of a directed verdict in favor of the Hetheringtons.

_____
Justice

11