No.   93-445 and 93-446

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GORDON PATTON, WILLIAM WINN,
ROBERT ALLEN, and VAL FARRELL,
        Petitioners and Respondents,

-v-

MADISON COUNTY and THE BOARD OF
COUNTY COMMISSIONERS, WILLIAM R.
DRINGLE, Chairman; BYRON BAYERS,
JOHN ALLHANDS, and WALTER KANNON,
and HAMBLETONIAN INN, INC.,
        Respondents and Appellants.

FILED

JUN 2 1 1994

Cal Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

DAN R. McCLAIN and MARY ALICE McCLAIN,
Trustees under the DAN R. McCLAIN and
MARY ALICE McCLAIN DECLARATION OF TRUST,
        Plaintiffs and Respondents,

-v-

WALTER KANNON and HAMBLETONIAN INN, INC.,
        Defendants and Appellants.


APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                James H. Goetz and Robert K. Baldwin, Goetz, Madden
                & Dunn, Bozeman, Montana

        For Respondent:

                J.   Robert   Planalp,   Landoe,   Brown,   Planalp   &
                Braaksma, Bozeman, Montana; Loren Tucker, Madison
                County Attorney, Virginia City, Montana


                        Submitted on Briefs:   March 31, 1994

                                   Decided:   June 21, 1994

Filed:

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal by appellants Walter Kannon and Hambletonian Inn, Inc., from a Fifth Judicial District Court, Madison County, judgment enforcing the settlement agreement, dated August 17, an order dated July 7, 1993, and an order denying Kannon's motion for summary judgment dated June 15, 1992. We reverse.

The following are issues on appeal:

I. Did the District Court err in denying summary judgment for respondents and enforcing the oral settlement dictated into the record on June 23, 1992?

II. Did the District Court err in denying Kannon's May 5, 1992, motion for summary judgment regarding Patton's lack of standing?

III. Did the District Court err in denying Kannon's May 4, 1992, motion for summary judgment regarding McClain's claim that Kannon was violating the restrictive covenants?

IV. Did the District Court err in granting judicial review of the respondents' challenge to the Board of County Commissioners' approval of the recorded covenants in the instant case?

BACKGROUND

Initially, we provide some framework to assist in a more complete understanding of the present case. On October 26, 1993, pursuant to Rule 4(b), M.R.App.P., counsel for the parties stipulated to the consolidation of the appeals in the two above captioned cases because of the numerous identical or overlapping issues. This Court ordered the two cases consolidated on October

2

27, 1993.

The appellants in the first case are Madison County and the Board of County Commissioners (Board), the Hambletonian Inn, Inc. and Walter Kannon, who, with his family, is a shareholder in Hambletonian Inn, Inc. (collectively, Kannon). Kannon is also the president of Hambletonian Inn Inc. The Inn owns Lots 3 and 4 in the Kenner Estates Minor Subdivision. The respondents (Patton respondents) in the first captioned case are owners of real property adjacent to the Kenner Estates Subdivision.

The appellants in the second captioned case are Walter Kannon and the Hambletonian Inn, Inc. (collectively Kannon). The respondents (McClain respondents) in the second captioned case live within the four tract Kenner Estates Subdivision. When all respondents from both cases are referred to, the term "respondents" will be used.

The following background material is gleaned from the petition in Patton v. Madison County, one of the two cases consolidated herein. The petition alleges the following:

> That on or about November 29, 1988, the Madison County Planning Board considered the application of Bay Bank for approval of a four-lot subdivision known as Kenner Estates located on 24.8 acres adjacent to the Madison River.
> On December 7, 1988, the Madison County Planning Board recommended to the Respondents that the preliminary plat for Kenner Estates be approved subject to State Department of Health and Environmental Sciences' approval and covenants be recorded that provided no structures would be allowed on any of the four tracts except one single-family dwelling, one garage and one guest house.
> That at the regular meeting of the Respondents on February 13, 1989, the application for preliminary plat approval of Kenner Estates was approved....This approval was conditioned on the applicants obtaining approval of

3

the State Department of Health and Environmental Sciences and the recording of protective covenants that provide that no structure should be allowed on any of the four tracts except one single-family dwelling, a garage and a guest house.

. . .

After receipt of the preliminary plat approval, the applicant recorded a set of protective covenants that did not conform to the mandated terms of the approved protective covenants. . . .

That since the approval of the subdivision, at least three of the four residential lots have been sold to purchasers. One such purchaser, Walter Kannon, has utilized his tract of land as a commercial hunting and fishing lodge which has housed, fed and entertained sportsmen for a fee.

The respondents further state in their brief that the Hambletonian Inn, Inc. closed the sale of Lot 3 on May 23, 1989, receiving title subject to the protective covenants of record, which had been previously filed on May 12, 1989. They assert that on November 27, 1989, they attended a Madison County Planning Board meeting for the express purpose of registering complaints that the Inn was being operated in violation of the protective covenants of the subdivision.

Finally, the respondents state in their brief:

The protective covenants as recorded are interpreted to mean that this is a residential subdivision and that there is allowed on each tract of land three structures: a single family dwelling, a two car garage and one guest house on Tracts 1, 2 and 3. There are no dog kennels allowed on any tract nor are there any stables for horses allowed on any tract except Tract 4. The phrase "existing structures excepted" means that any structures that presently existed within the subdivision that were not a dwelling, a two car garage or a guest house need not be torn down. Commercial operations are prohibited from the Kenner Estates Subdivision.

On April 30, 1990, the Planning Board passed a motion accepting the Kenner Estates Subdivision and the covenants as

4

recorded. The covenants as recorded were accepted even though the covenants proposed were not the same as those recorded. At the May 7, 1990 meeting of the Board of County Commissioners, the County decided to give their full support to the Planning Board's decision to accept the covenants to the subdivision as recorded and followed their decision with a letter to the Planning Board. The respondents thereafter, filed two separate actions contesting the operation of the bed and breakfast on Lot 3.

## I. ORAL SETTLEMENT AGREEMENT

Did the District Court err in granting summary judgment for respondents and enforcing the oral settlement dictated into the record on June 23, 1992?

Kannon asserts that the settlement agreement was not a binding agreement. Kannon insists that the "settlement" which was recorded at the June 23, 1992 hearing was conditioned upon approval of a final settlement agreement. We agree.

The transcript of the proceedings on June 23, 1992, reveals the following testimony:

> Secondly, although my clients are here and I believe all respective clients are here and I want them to consent to this in sum and substance, this is conditioned upon the approval of the appropriate settlement documents and covenants by the parties of record and their attorneys.

(Emphasis added.) Additionally, the testimony relates that:

> We dictated into the record the hope that this matter can be drawn, submitted, **approved** and then a hearing scheduled by the County Commissioners very soon....

5

The Court, in reply to this statement, concluded:

> Well, we'll just continue it without a date and then counsel can keep in touch with me and keep me advised as to the progress. And we'll schedule the matter if it has to be tried. Does there appear to be -- are you in the ballpark? Is there going to be a settlement?

Counsel then replied:

> I think so. (Emphasis added.)

"An agreement is binding if made by an unconditional offer, and accepted unconditionally." Hetherington v. Ford Motor Co. (1993), 257 Mont. 395, 399, 849 P.2d 1039, 1042. In the instant case, the settlement read into the record states that "this is conditioned upon the approval of the appropriate settlement documents and covenants." (Emphasis added.) There is, therefore, no unconditional offer, and there can also, then, be no unconditional acceptance.

> The intentions of the parties are those disclosed and agreed to in the course of the negotiations. A party's latent intention not to be bound does not prevent the formation of a binding contract. Such a condition, that it will not be effective until signed, must be part of the agreement between the parties. (Citations omitted.)

Hetherington, 849 P.2d at 1042. Here, the intention of the parties, made clear on the record, was that the final settlement documents and covenants would have to be approved. The respondents' attorney said he thought that there was going to be a settlement. The condition that the settlement would not be effective until signed was a part of the agreement between the parties. Hetherington, 849 P.2d at 1042. Therefore, there was no unconditional offer nor was there an unconditional acceptance.

6

Kannon also argues that there was no "meeting of the minds" on the material terms of the settlement and therefore, there was no binding agreement. Again, we agree. The transcript of June 23, 1992, reveals that the agreement was conditional. Moreover, in the correspondence between the attorneys which followed the June hearing, the respondents' attorney added extra restrictions in the list of covenants in their amended covenants dated July 13, 1992. Kannon's letter in response to the respondents' amended covenants stated that further discussion would be appreciated regarding possible additions to existing structures. Additionally, the respondents did not reply to another set of amended covenants Kannon had prepared, and instead, wrote Judge Davis to request a trial date. These activities are not those of two parties who have had a "meeting of the minds." Hetherington, 849 P.2d at 1043. The matters still at issue were not "subsidiary," or "collateral," they were central to the very performance of the contract. Hetherington, 849 P.2d at 1043. The parties' disagreement did not involve any issue which could easily have been settled by the court's ruling that the appropriate covenants could be drafted. Hetherington, 849 P.2d at 1043. The covenants could only have been drafted and approved by the parties. The terms of the covenant were the essential matters at issue. There was no meeting of the minds in the instant case, and therefore, no binding settlement.

Because there was no unconditional offer, no unconditional acceptance, and no meeting of the minds, there was neither an executory accord nor a substituted contract as argued by the

7

parties. There was simply an attempted but non-binding settlement. We hold that the District Court erred in granting summary judgment in the respondents' favor and also erred in its order enforcing the oral settlement transcribed in the June 23, 1992 record. Accordingly, we reverse the District Court on this issue.

## II. STANDING

Did the District Court err in denying Kannon's May 5, 1992 motion for summary judgment regarding Patton's lack of standing?

The appellants contend that the respondents in the present case lack standing to enforce the restrictive covenants or compel the county to enforce the covenants. The respondents argue that because they are neighbors, and were invited to participate in the subdivision process, they have standing to enforce the covenants. Moreover, they state that the restrictive covenants constituted a negative easement, enforceable by the neighbors.

While the public may be invited to or have a right to provide input into the subdivision process, it does not follow that, without ownership of property within the subdivision, statutory authorization or on the basis of some other legal theory not at issue here, members of the public necessarily have the right to enforce or to insist that the local government enforce restrictive covenants once those are approved by the local government as a part of the subdivision. We conclude that here, the neighbors outside of the subdivision do not have standing to enforce the restrictive covenants in the instant case. Lillard v. Jet Homes, Inc. (La. 1961), 129 So.2d 109, is instructive as to the rationale for not

8

extending standing rights to those persons not a part of the subdivision. It states:

> Where a tract of land is subdivided into lots and burdened with restrictive covenants, real rights are created running with the land in favor of each and all of the grantees. <u>The basis of the creation of this right is the mutuality of burden and the mutuality of benefit as between the grantees arising out of the imposition of such restrictions on the land itself.</u> This mutuality of burden and benefit constitutes reciprocal promises as between the grantees, each supported by that of the other.

Lillard, 129 So.2d at 111-112. (Emphasis added.) Moreover:

> Anyone not a grantee within the particular area or subdivision covered by the restrictions in question acquires no right thereunder as there is no mutuality of benefit or mutuality of burden as between his lot in one subdivision covered by one set of general restrictions and a lot in another subdivision covered by another different, distinct, and separate set of general restrictions. This lack of mutuality, or privity, prevents the creation of the real right, or the extension of the real right burdening one defined area to another area not described or included therein.

Lillard, 129 So.2d at 112.

In the instant case, Pattons, Winns, Allens and Farrells live in the area but do not live in the subdivision. Only Dan and Mary Alice McClain live in the Kenner Estates Minor Subdivision. The McClain respondents are the only respondents who share the mutuality of burden and benefit with Kannon as fellow owners of property in the Kenner Estates Subdivision. The others simply are not party to the reciprocal promises made between the grantees which form the basis upon which to challenge another grantee's right to use his land in a given manner.

<u>See also generally</u>; Town & Country Estates Ass'n v. Slater (1987), 227 Mont. 489, 740 P.2d 668 ("...the free use of the

property must be balanced against the rights of the other purchasers in the subdivision....[e]ach purchaser in a restricted subdivision is both subjected to the burden and entitled to the benefit of a restrictive covenant."); Kosel v. Stone (1965), 146 Mont. 218, 404 P.2d 894 ("The purchasers having assented to such restrictions, they and their assigns may ordinarily enforce them inter sese for their own benefit.") (Citation omitted.)

The respondents cite Reichert v. Weeden (1980), 190 Mont. 95, 618 P.2d 1216, for their argument that the restrictive covenants constitute a negative easement and are enforceable by the neighbors. However, the "neighbors" involved in Reichert were parties to the agreement which created the negative easement at issue. Moreover, all parties involved in the action in Haggerty v. Gallatin County (1986), 221 Mont. 109, 717 P.2d 550, also cited by the respondents, were parties to the agreement in question. Therefore, they do not stand for the proposition that "neighbors" have standing to challenge the restrictive covenants of other parties.

The Patton respondents also argued that they had standing to compel the Board to enforce the covenants. In State Etc. v. Board of Cty Commissioners (1979), 181 Mont. 177, 592 P.2d 945, this Court discussed standing and who has a legal interest in subdivision issues. In concluding that Professional Consultants Inc., which platted five minor subdivisions and then submitted them to the Ravalli County planning board for review and approval, had no standing to maintain an action to compel the board to act upon

10

the proposed subdivision, this Court stated:

> Petitioner has stated no legal interest in any of the minor subdivisions that are the subject of this action. It is not the owner or purchaser of any of the property involved in this cause, and admits that it lacks any legal or equitable interest in the land. Some form of ownership in the land is necessary to embark standing to bring a mandamus action. (Citations omitted.)

State, Etc., 592 P.2d at 947. By the same token, parties who live outside of the subdivision do not have any legal interest in the subdivision. Therefore, they do not have any standing to compel the Board to enforce the covenants. The McClain respondents, who do live within the subdivision, did not seek to compel the Board to enforce the covenants in their complaint.

In conclusion, the Patton respondents are not owners of property within the subdivision and therefore, do not share the mutuality of the benefits and burdens as between grantees of the subdivision. We hold that the neighbors who live outside of the subdivision lack standing to enforce the restrictive covenants under the subdivision. The McClain respondents, who are owners of property within the subdivision, do have standing to challenge the restrictive covenants. However, because they did not seek to compel the Board to enforce the covenants, that issue is not before this Court.

### III. RESTRICTIVE COVENANTS

Did the District Court err in denying Kannon's May 4, 1992 motion for summary judgment regarding McClain's claim that Kannon was violating the restrictive covenants?

Kannon states that the restrictive covenant at issue imposes

11

a restriction on the property, but that the exception in the covenant excepts existing structures from that restriction. He contends that because all structures existed at the time of the purchase of the property, they are free from the restrictive covenant. Moreover, the historical use of the property has been that of a lodge or guest house. The Pattons, Winns, Allens, Farrells and McClains took exception to Kannon's use of his property to operate a bed and breakfast, contending that Kannon's commercial operation violated the single family dwelling restrictive covenant.

The original covenant at issue, recorded in Madison County by the County Recorder on May 12, 1989, stated that:

> No structure shall be allowed on any tract except one (1) single family dwelling, a two-car garage, and one (1) guest house on Tracts 1, 2 and 3. Existing structures excepted. A stable for horses will be allowed on Tract 4.

However, the Chairman of the Madison County Planning Board and the Consulting Staff Planner had previously written a letter to the County Commissioners on December 7, 1988, stating that the applicable covenant should read:

> No structure shall be allowed on any tract except one single family dwelling with a two car garage and one guest house. A stable is also allowed on Lot 4.

The clause, "existing structures excepted" was omitted. The Board then conditionally approved the Kenner Estates Minor Subdivision at its February 13, 1989 meeting. On May 19, 1989, Bill Dringle, the Chairman of the Board of County Commissioners wrote a letter to Jim McGee of Bay Bank, stating that its application for preliminary

12

plat approval for the subdivision had been approved subject to certain conditions and including the modified covenant which did not except existing structures from the restriction.

The discrepancy between the covenants as recorded and the covenants as approved by the County Commissioners was the subject of much debate in Planning Board meetings, Board of County Commissioners meetings and a joint meeting between the two boards. However, the issue was resolved when the Planning Board, upon advice from the County Attorney, voted to "accept the Kenner Estate Minor Subdivision and covenants as recorded even though the covenants proposed and those recorded had different wording." At the May 7, 1990 meeting of the Board, the Commissioners accepted and announced their full support of the Planning Board's decision to accept the covenants as recorded. Therefore, the covenants we address are those recorded on May 12, 1989, including the covenant which excepts existing structures from restrictions.

We hold that the operation of the bed and breakfast does not violate the restrictive covenant, for the reason that the covenant does not restrict the use of structures on the property. The covenant merely states that no structures shall be allowed on any tract except one single family dwelling, a two-car garage and one guest house. This is a restriction based on the types and number of buildings allowed on the property. Indeed, historically, the property was used as a guest ranch or a guest resort.

Jones v. Park Lane for Convalescents (1956), 120 A.2d 535, is instructive concerning the two types of restrictive covenants. The

13

Jones court stated:

> Restrictions limiting the right of the owner to deal with his land as he may desire fall naturally into two distinct classes, the one consisting of restrictions on the type and number of buildings to be erected thereon, and the other on the subsequent use of such buildings. The restrictions in the former class are concerned with the physical aspect or external appearance of the buildings, those in the latter class with the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein as affecting the health, welfare and comfort of the neighbors. A building restriction and a use restriction are wholly independent of one another, and, in view of the legal principles above stated, the one is not to be extended so as to include the other unless the intention so to do is expressly and plainly stated; to doubt is to deny enforcement.

Jones, 120 A.2d at 538. The restrictive covenant at issue here states that "[n]o structure shall be allowed on any tract except one (1) single family dwelling, a two-car garage, and one (1) guest house. . . ." As stated above, this covenant limits the type and number of buildings on the property; it does not place restrictions on the use of the property.

Moreover, if the developers, Planning Board, Board or interested parties were concerned that no commercial operation akin to the Hambletonian Inn would be established in Kenner Estate Minor Subdivision, they could have argued for that restriction and so provided in the covenant. Collins v. Goetsch (Haw. 1978), 583 P.2d 353, 358. No such action was taken.

The respondents' brief cites numerous cases standing for the proposition that if the rental of rooms is frequent, the single family dwelling restriction is violated. However, in the cases cited, the covenants at issue all contained language specifically

14

pertaining to the use of the buildings. In the instant case, the covenant contains no language addressing the use of the buildings; the restriction applies to the types and number of buildings. See Sayles v. Hall (Mass. 1911), 96 N.E. 712; Pierce v. Harper (Mo. 1925), 278 S.W. 410; Kiernan v. Snowden (1953), 123 N.Y.S.2d 895; Southhampton Civic Club v. Couch (Tex. 1959), 322 S.W.2d 516; Wallace v. St. Clair (W.Va. 1962), 127 S.E.2d 742.

In conclusion, whether the term "existing structures excepted" is applied or not, because the restrictive covenant does not address the use of the buildings, Kannon's commercial operation does not violate the covenant at issue. The covenant merely describes the type and number of buildings allowable on a lot in the subdivision. If there was a desire to restrict the use of the buildings, the desired restrictions should have been explicitly included in the covenants. We hold that the District Court erred when it granted summary judgment to the respondents on this issue. Accordingly, we reverse the judgment of the District Court on this issue.

## IV. JUDICIAL REVIEW

Did the District Court err in granting judicial review of the respondents' challenge to the Board of County Commissioners' approval of the recorded covenants in the instant case?

We concluded in Issue II that the Patton respondents did not have standing in the instant case. The McClain respondents are the only respondents who have the requisite interest in the subdivision and its restrictive covenants to acquire standing. The McClain

15

respondents, however, did not raise the issue of whether the Board could be compelled to enforce the covenant. Therefore, since the Patton respondents do not have standing and the McClain respondents did not take issue with the Board's approval of the covenant, this issue is not before this Court, and accordingly, it will not be addressed.

REVERSED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

16

IN THE SUPREME COURT OF THE STATE OF MONTANA

GORDON PATTON, WILLIAM WINN,
ROBERT ALLEN, and VAL FARRELL,

   Petitioners and Respondents,

  v.

MADISON COUNTY and THE BOARD OF
COUNTY COMMISSIONERS, WILLIAM R.
DRINGLE, Chairman; BYRON BAYERS,
JOHN ALLHANDS, and WALTER KANNON,
and HAMBLETONIAN INN, INC.,

   Respondents and Appellants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DAN R. McCLAIN and MARY ALICE
McCLAIN, Trustees under the DAN R.
McCLAIN and MARY ALICE McCLAIN
DECLARATION OF TRUST,

   Plaintiffs and Respondents,

  v.

WALTER KANNON and
HAMBLETONIAN INN, INC.,

   Defendants and Appellants.

No. 93-446

No. 93-445



AUG 10 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

---

O R D E R

---

  IT IS HEREBY ORDERED that the Opinion of this Court dated June 21, 1994, is amended as follows:

  On page 2 of the opinion beginning at line 7, the first issue is amended to read:

   I. Did the District Court err in enforcing the oral settlement dictated into the record on June 23, 1992?

  On page 5 of the opinion beginning at line 10, the issue is amended to read:

   Did the District Court err in enforcing the oral settlement dictated into the record on June 23, 1992?

1

The Clerk is directed to mail copies hereof to counsel of record for the respective parties.

DATED this _10th_ day of August, 1994.

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

_Justices_