Gerald A. BEHLING, Paul Browning, Rick Buchanan, Sharon Childress, Tari R. Conroy, Phillip Cook, Robert "Mike" Frisbie, Lyle Goracke, Robert J. Hackel, David O. Hall, Michael Heller, Gregg Holt, Robert House, Stuart "Curtis" Ingraham, Ray Luchi, Steven Norman Mosbrucker, Dave Osborn, Randy Rennaker, Scott Allen Rotering, Dwayne Springer, Michael John

Steele, Dan Wiseman, Sr., Dan Wiseman, Jr., and Brandon Zeiler, on their own behalf and as representatives of similarly situated Plan Participants of the Darby Lumber, Inc. Employee Stock Ownership Plan and Trust, Plaintiffs,

v.

Robert E. RUSSELL, Peggy Russell, Darby Lumber, Inc., and John Does 1–10, Defendants.

Nos. CV 99–165–M–DWM, CV 02–15–M–DWM.

United States District Court, D. Montana.

Dec. 3, 2003.

ORDER

MOLLOY, Chief Judge.

## I. Introduction

The parties to a number of related cases arising out of the Darby Lumber, Inc. Employee Stock Ownership Plan transaction and subsequent Darby Lumber bankruptcy held a settlement conference in Billings, Montana in late September. Judge Richard Cebull presided over the negotiations, which produced a tentative agreement on September 25, 2003. Attorneys representing all parties informed Judge Cebull that a settlement had been reached. In the following days, the parties disagreed over the terms of the alleged deal. After failed negotiations to resolve their differences, the Behling Plaintiffs filed a Motion for an Order Approving Settlement. The Russell Defendants oppose the motion. Defendant Indiana Lumbermens Insurance Company

("Lumbermens") take no position on the motion.

## II. Factual Background

The parties convened on September 24, 2003 for a two day settlement conference before Judge Cebull. The negotiations produced agreement on a number of issues, including a dismissal of all claims against the Russells and their insurers, Indiana Lumbermens, in exchange for Lumbermens' payment of $4.5 million to the participants of Darby Lumber Employee Stock Ownership Plan (the "Plan"). After Judge Cebull had been informed of the settlement, a written document reciting the terms of the alleged agreement was prepared by Richard Reep and Robert Bell, and presented by Douglas Wold.[1] At the time of the presentation of the written agreement, Ken Dyrud and Jean Faure, the Russells' designated negotiating counsel, had already left the conference. The agreement did not contain a provision indemnifying the Russells from contribution claims brought in the future by third parties who are being pursued by the Behling Plaintiffs, which the Russells contend was announced as a condition of any settlement at the outset of the conference. The Russells have since objected to the purported settlement because it lacks the aforementioned indemnity provision.

## III. Analysis

The primary obstacle to settlement under the terms allegedly reached at the September 24–25, 2003 settlement conference is the absence of a provision indemnifying the Russells from all potential claims for contribution by third parties who may be defendants in future action brought by the Behling Plaintiffs arising from the

---

**1.** Though they are counsel for the Russells, the Russells dispute that Reep, Bell or Wold had any authority to negotiate on their behalf.

Darby Lumber, Inc. ESOP transaction. In support of their position that settlement has not been reached in this case, the Russell Defendants argue that (1) ERISA and the derivative nature of the action impose procedural requirements which render the alleged settlement inadequate; (2) the Russell Defendants' counsel, Jean Faure and Ken Dyrud, were not present for and therefore did not authorize the alleged agreement; and (3) the settlement agreement is not binding under applicable Montana law.

## A. Procedural problems imposed by ERISA and Rule 23

The Russell Defendants argue that because the Behling Plaintiffs do not constitute the entirety of the Plan participants injured in this action, theirs is a derivative suit and subject to the requirements of Rule 23, Rule 23.1, or Rule 23.2 of the Federal Rules of Civil Procedure. There are no class action claims in this suit, and the Ninth Circuit has held that a derivative suit by a plan beneficiary on behalf of a trust is not a derivative action as contemplated by Rule 23.1. *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1462–63 (9th Cir.1995). The parties seeking to impose settlement in this case are therefore not required to "comply with requirements" of Rule 23, Rule 23.1, or Rule 23.2, F.R. Civ. P., as the Russells argue. Further, those rules require only that a settlement be approved by the Court, and are irrelevant to the inquiry at hand, which is whether a settlement agreement has been reached in this case.

The Russells argue that the Behling Plaintiffs' failure to join the Plan, Trust, Plan Committee or Trustee has "left the parties and the Court without a Plan fiduciary that could authorize a settlement or dismissal stipulation, binding upon the Plan and all Plan Participants, on whose behalf this action was sought." The Russells contend that the claims brought by the Behling Plaintiffs are assets of the Plan, and note that the Plan Committee is the only "named fiduciary" under the Plan directly responsible for controlling Plan assets. They note that the Plan further provides that custody of all Plan assets shall at all times be retained by the Trustee. Because the Plan Committee and the Trustee have not been joined, presumably as plaintiffs, the Russells argue that no binding settlement is even possible, and therefore that settlement should not be enforced in this case. The Russells cite no case law or statutes in support of their position.

This Court has previously found that the Plan participants do not need consent or authorization from the ESOP to bring suit, by Order dated October 11, 2002. In fact, the right of Plan participants to bring breach of fiduciary duty claims on behalf of the Plan, irrespective of the position of the current Plan fiduciaries, is statutory. 29 U.S.C. § 1132(a)(2). This appears to be an attempt by the Russells to place before the Court for reconsideration their Motion for Joinder of Necessary Parties, which was denied by Order dated September 15, 2003. In any case, the issue raised by the Russells has no bearing on whether a binding settlement has been reached in this case.

## B. The absence of Ken Dyrud and Jean Faure

The Russells contend that it was made clear to all parties at the settlement conference that Ken Dyrud and Jean Faure had to be physically present and participate in all binding settlement negotiations. Since neither Dyrud nor Faure was present for any agreement, the Russells argue that no binding settlement could have taken place. The Behling Plaintiffs contend that an agreement was reached as evidenced by a writing prepared by Richard

Reep and Robert Bell and presented by Douglas Wold. According to the Behling Plaintiffs, Dyrud and Faure had already left the conference at the time Wold presented the writing because the case had settled. The Behling Plaintiffs note that the Russells were represented by five lawyers at the settlement conference-Reep, Bell and Wold, in addition to Dyrud and Faure- and that as a result the Russells should not be permitted to assert a lack of specific authority as to those that participated in the alleged agreement. Testimony at the hearing indicated that the primary negotiator on the Russells' behalf was in fact Guy Rogers, attorney for Defendant Lumbermens. It seems that after Russell counsel agreed to various terms specific to the Russells [2], Rogers took over in negotiating the final dollar amount for both the Russells and their insurer. It is not necessary for the Court to determine whether an attorney authorized to negotiate for the Russells approved the agreement because the Court concludes that, regardless of the authority of the counsel involved, the parties have not reached a binding settlement under Montana law.

## C. Validity of the alleged agreement under Montana law

■ The Russells contend that, even if it is assumed that the attorneys acting on their behalf had authority to settle the case, the alleged agreement does not meet Montana's standard for enforcing a settlement on the parties. The Russells base their position on Montana statutory law requiring that for an attorney's agreement to be binding on his client, the agreement must be filed with the clerk or entered upon the minutes of the court. Montana case law holding that a settlement is reached when a price term and release of claims have been agreed upon is inapplicable, the Russells argue, because those cases involve direct approval by the parties, not their attorneys. The Behling Plaintiffs do not dispute that the Russells did not personally agree to the terms, but argue that the statutory limitation on attorneys' agreements does not apply to oral settlements reached in judicially supervised mediation conferences.

■ The enforceability of an agreement to settle a federal case is a question governed by applicable state law. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 382, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

The Russells argue that the provisions of M.C.A. § 37–61–401(1)(a) apply to this case. The statute reads:

(1) An attorney and counselor has authority to:

(a) bind his client in any steps of an action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court and not otherwise.

In construing § 37–61–401(1)(a), the Montana Supreme Court has noted that the purpose of the statute "is to relieve the presiding judge of determining controversies between attorneys as to their unexecuted agreements." *State v. Nelson* (1991), 251 Mont. 139, 141, 822 P.2d 1086. In *In re Estate of Goick* (1996), 275 Mont. 13, 23, 909 P.2d 1165, the Montana Supreme Court found an oral settlement

---

**2.** Several of the concessions made by the Russells in the alleged agreement do not pertain to interests being defended by Lumbermens, including (1) an agreement to waive any distribution in the Darby Lumber bankruptcy proceeding; (2) an agreement to dismiss all claims and counterclaims in a Ravalli County lawsuit involving payment of a promissory note; and (3) an agreement to assign to the Behling Plaintiffs the Russells' claims arising out of the ESOP transaction against "advisors", including Richard Reep and his law firm.

agreement entered into by the attorneys over the phone not binding because the parties themselves had not both agreed and the attorneys' agreement was not filed with the clerk or entered upon the minutes of the court as required by § 37–61–401(1)(a).

A seemingly contradictory line of cases, including *Hetherington v. Ford Motor Co.* (1993), 257 Mont. 395, 849 P.2d 1039 and *Carlson v. State Farm Mutual Automobile Ins. Co.*, 76 F.Supp.2d 1069 (D.Mont.1999), states the rule that an unconditional settlement agreement will be enforced even in the absence of detailed agreement on all provisions, provided the material elements are agreed upon. In *Hetherington,* the court held that the material elements were the amount of settlement and the release of all claims by the plaintiff, and that the settlement was enforceable based on the parties' agreement on those two elements. 257 Mont. at 400, 849 P.2d 1039. In *Carlson,* this Court adopted a magistrate's finding regarding the effective date of the settlement based on the contract theory of settlement set forth in *Hetherington.* 76 F.Supp.2d at 1071–72. In each case, the party challenging the settlement or its effective date personally agreed to the terms and approved the settlement. *Hetherington,* 257 Mont. at 397, 849 P.2d 1039; *Carlson,* 76 F.Supp.2d at 1072–73.

Neither *Hetherington* nor *Carlson* discuss M.C.A. § 37–61–401(1)(a). The statute presumably was not raised in those cases because the agreement of the parties to the settlement was not an issue. The Behling Plaintiffs argue that *Hetherington* applies and point out that the material elements enumerated in *Hetherington* do not include written consent. The point, while accurate, is of no help to the Behling Plaintiffs because the Russells' argument is not that the absence of their written consent negates settlement, but rather that they did not give any consent, written or otherwise, to the agreement their attor-neys reached, which makes the agreement non-binding on them under § 37–61–401(1)(a). To support their argument, the Behling Plaintiffs cite generally *Anderson v. Anderson* (2003), 315 Mont. 536, 66 P.3d 322. Though *Anderson* is an unpublished case, Plaintiffs cite it as authority noting that it has not been listed as "noncitable" by the Montana Supreme Court. The Plaintiffs' argument is controverted by the first sentence of the opinion, in which the Court commands that the decision "shall not be cited as precedent." 315 Mont. at ¶ 1, 67 P.3d 258.

It is difficult to see why the Behling Plaintiffs cite *Anderson* at all. *Anderson,* while not to be cited as precedent, states explicitly the implicit distinction which makes M.C.A. § 37–61–401(1)(a) and *Goick* reconcilable with *Hetherington* and thereby supports the Russells' position:

"An agreement to settle is binding if made by an unconditional offer and accepted unconditionally. The parties must consent to all terms before a settlement agreement becomes binding. Because a settlement agreement reached by the respective attorneys becomes binding on the parties *only* when the parties consent to all the terms, the agreement is not one that exists solely between the attorneys and need not be 'filed with the clerk or entered upon the minutes of the court' to be valid, as contemplated by § 37–61–401(1), M.C.A."

*Anderson,* 315 Mont. at ¶ 49, 66 P.3d 322. [Citations omitted.] Testimony at the hearing makes clear that the Russells were not present for the agreement and did not personally approve the agreement. Under those facts, M.C.A. § 37–61–401(1)(a) and *Goick* are a better fit than *Hetherington,* because the Russells never manifested any acceptance, oral or otherwise, of the settlement agreement.

Absent some evidence of the Russells' approval of the agreement[3], the requirements for an enforceable settlement under Montana law have not been met.[4]

In an attempt to get over the obstacle presented by the Russells' non-consent, the Behling Plaintiffs point out that the Indiana Lumbermens Insurance Policy covering Darby Lumber, Inc. authorizes the insurer to make any settlement without the consent of the insured. In relevant part, the policy states "the Company may make ... such settlement of any claim or suit as the Company deems expedient." The Behling Plaintiffs argue that the language of the policy renders the Russells' consent unnecessary and their objection meaningless. In support of their position, they cite *Keown v. Katz*, 1991 WL 161616, in which the Ninth Circuit Court of Appeals, interpreting Hawaii law, held that a similar provision did not yield a requirement that the insured consent to the settlement. The *Keown* case has been withdrawn by the Ninth Circuit and is not valid authority, and the Behling Plaintiffs cite no other Ninth Circuit authority for their position. Nor do they attempt to square their position with Montana's statutory requirement under § 37–61–401(a) that a party agree to a settlement between attorneys. While Indiana Lumbermens represents the Russells with regard to certain of the claims resolved in the alleged

settlement, the Russells make several other concessions in the agreement which do not pertain to interests being defended by Lumbermens. These include an agreement to waive any distribution in the Darby Lumber bankruptcy proceeding; an agreement to dismiss all claims and counterclaims in a Ravalli County lawsuit involving payment of a promissory note; and an agreement to assign to Plaintiffs the Russells' claims arising out of the ESOP transaction against "advisors", including Richard Reep and his law firm.

Thus, while it may be technically true that the relevant policy gives Lumbermens the authority to settle over the Russells' objection on those matters for which it is defending the Russells, the settlement is broader in scope, implicating more of the Russells' rights and interests than those defended by Lumbermens. As a result, they are a party to the settlement and their approval is necessary under Montana law.

## IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Behling Plaintiff's Motion for an Order Approving Settlement is DENIED.

---

**3.** At oral argument, the Behling Plaintiffs argued for an exception to the application of M.C.A. § 37–61–401(a) where an agreement is reached at a settlement conference mandated and supervised by the court. Without citing authority for their position, the Behling Plaintiffs contend that the statute should not apply because a settlement in the court-supervised context does not present the problems that § 37–61–401(a) was intended to address, because the parties are instructed to send to the conference attorneys who are authorized to negotiate on their behalf. The distinction sought by the Plaintiffs, while perhaps in keeping with the spirit of the statute, is contrary to its plain language. In the absence of any suggestion in the case law that such an exception exists, this Court is bound to apply the statute as it reads.

**4.** In addition to their arguments under Montana law, the Russells argue extensively that the settlement agreement is not enforceable under the factors set out in *Ciaramella v. Reader's Digest Assoc.*, Inc., 131 F.3d 320 (2nd Cir.1997). Because both parties concede that Montana law controls on the question, the Russells' argument is not considered here.