No. 93-428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

BILL WATKINS,

      Plaintiff and Respondent,

  v.

TOM WILLIAMS and
VIRGINIA WILLIAMS,

      Defendants and Appellants.

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Defendants and Appellants:

          Kevin E. Vainio, Butte, Montana

      For Plaintiff and Respondent:

          Gilbert U. Burdett, Burdett Law Firm,
Billings, Montana

**FILED**

JUN 2 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  April 21, 1994

Decided:  June 2, 1994

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Tom and Virginia Williams appeal from a judgment of the Second Judicial District Court entered against them following a jury verdict awarding Bill Watkins $20,191. They also appeal the denial of their motions for judgment notwithstanding the verdict and for a new trial.

We rephrase the dispositive issues as follows:

1. Whether the District Court erred in permitting Watkins to testify about the amount of damages he suffered.

2. Whether the court erred in determining that evidence about circumstances surrounding Watkins' alleged criminal arrest was inadmissible.

3. Whether the court erred in finding that the parties' attempted accord agreement was not satisfied and therefore did not extinguish their previously existing oral contract.

4. Whether the court erred by excluding evidence concerning the alleged forgery of a bill of sale.

5. Whether the court erred in excluding from evidence a letter, introduced by the Williamses at trial, which purported to contain material terms of compensation for Watkins' horse training services.

Tom and Virginia Williams own racehorses. At times, their horses have raced on tracks in Montana, Wyoming, Idaho and Oklahoma.

During March 1989, the Williamses asked Bill Watkins, a licensed horse trainer, to train six of their racehorses on

2

location at Sallisaw, Oklahoma. Watkins agreed. The parties dispute whether their oral agreement contained material terms regarding compensation for Watkins' services.

The Williamses and Watkins opened an account at Blue Ribbons Downs racetrack, located near Sallisaw. As one of the Williamses' horses placed in or won a race, the winnings were deposited in the account. Racetrack expenses, such as entry fees, were taken out of the account. The parties agreed that Watkins could withdraw certain monies from the account to cover his training costs and charges.

Watkins provided the horses with hay, alfalfa, grain, vitamins, stables and exercise, among other things. At his request, jockeys galloped the horses around the track. Watkins also had veterinarians attend to the horses' medical needs.

Two of the six horses, The Right Key and Bodella, were taken off training status during the Fall of 1989. The Williamses drove from Montana to Oklahoma with a horse trailer and picked up The Right Key; Watkins put Bodella out to pasture after the horse failed to qualify in speed tests at the track.

Tom Williams occasionally visited Sallisaw to meet with Watkins and check on the horses during the course of the parties' contractual relationship. The Williamses irregularly paid Watkins portions of the amount they owed him; also, Watkins withdrew funds from the racetrack account from time to time.

The parties' contractual relationship ended approximately one year after it began. They met during March 1990 and worked out an

3

accord to extinguish the Williamses' existing debt to Watkins. They agreed that the Williamses would pay Watkins $5,000, and, at that time, Tom Williams tendered two $2,500 checks to Watkins.

Watkins sent the checks to his bank. When his account was not credited with the second $2,500 check, Watkins learned that the check had become lost.

He called the Williamses and asked them to stop payment on the check. They did. Watkins also asked the Williamses to issue another $2,500 check to complete their accord agreement. They refused.

The Williamses stated that they refused because when they retrieved their racehorses after making the accord agreement with Watkins, they found the horse Bodella to be in poor condition. Specifically, they alleged that Bodella had been mistreated and starved by Watkins.

Watkins obtained the services of an attorney. Through his attorney, Watkins again requested that the Williamses complete their accord agreement by reissuing the second $2,500 check. The Williamses again refused.

When Watkins sued the Williamses on the original oral agreement, he stated that the Williamses had incurred a debt of approximately $38,000. Watkins further stated that the Williamses had directly and indirectly paid approximately $18,000 of the debt, leaving a balance of $20,191 owing.

The Williamses responded by alleging that the parties had reached a separate accord agreement which had extinguished the

4

original oral contract. The Williamses also counter-claimed against Watkins, alleging that he mistreated their horse, Bodella.

At trial, testimony established that Watkins' charges for training horses was reasonable in Sallisaw, Oklahoma. The jury returned a verdict for Watkins, stating that the Williamses owed him $20,191. The jury found that Watkins did not owe the Williamses anything for the alleged mistreatment of Bodella. Judgment was entered accordingly, and the Williamses appeal.

## STANDARD OF REVIEW

We review a district court's findings of fact for clear error and its conclusions of law to determine whether the conclusions are correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 270, 803 P.2d 601. Regarding questions concerning the admissibility of evidence, the "question[s] . . . must in every case be left largely to the sound discretion of the trial court, subject to review only in case of manifest abuse." Cech v. State (1979), 184 Mont. 522, 604 P.2d 97, citing Gunderson v. Brewster (1970), 154 Mont. 405, 466 P.2d 589.

## ISSUE ONE

Did the District Court err by permitting Watkins to testify about the amount of damages he suffered?

The Williamses argue that the court erred by permitting Watkins to testify about the amount of damages he suffered because, while testifying, Watkins allegedly read from a document which was excluded from evidence. The document was a summary of contents contained in a wall calendar kept by horse trainers in Sallisaw.

5

Watkins presented it to the court for admission into evidence and the Williamses objected, stating that the summary was not the best evidence of Watkins' training services. After voir dire of Watkins, the Williamses also alleged that the document should be excluded as self-serving. The court sustained the Williamses' objection.

Watkins thereafter testified about the amount of training services he rendered. He specifically stated that he charged $18 per day per horse trained. The $18 figure included a myriad of services, from shoeing to galloping to feeding and sheltering. Watkins charged a different amount for attending to Bodella's needs while the horse was at pasture. The total bill for his services for the year was $37,888. And, Watkins testified, the Williamses had paid him $17,697 of the debt they owed him, reducing the amount owing to a balance of $20,191.

Disputing the figure, the Williamses argue that the court erred by allowing Watkins to testify while reading from the calendar summary. They allege that the testimony is improper according to Rules 1002 and 1006, M.R.Evid. Watkins responds by asserting that the best evidence rule does not exclude oral testimony and that the court correctly permitted him to testify about the damages he suffered.

Rule 1002, M.R.Evid., the best evidence rule, requires that "[t]o prove the content of a writing . . . the original writing . . . is required . . . ." Rule 1006, M.R.Evid., provides that:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in

6

> court may be presented in the form of a chart, summary,
> or calculation. The originals, or duplicates, shall be
> made available for examination or copying, or both, by
> other parties at a reasonable time and place. The court
> may order that they be produced in court.

The best evidence rule pertains to evidentiary documents only when the terms of the writing are material. State v. Cronin (1978), 179 Mont. 481, 587 P.2d 395. It comes into play only when the terms of a writing are being established and an attempt is being made to offer secondary evidence to prove the contents of the original document. See Application of Angus (Or.App. 1982), 655 P.2d 208, cert. denied (1983), 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 109.

Secondary evidence may include a copy of an original or testimony in regards to the contents of the original. See 32A C.J.S.2d Evidence, § 775. The secondary evidence is admissible over a best evidence objection if one of the requirements set forth at Rule 1004, M.R.Evid., has been met and proper foundation is laid.

Witness testimony adduced from personal experience or knowledge is not within the ambit of secondary evidence; witnesses may freely testify about events which have occurred independently from and may have been memorialized by an antecedent writing. See, e.g., Roods v. Roods (Utah 1982), 645 P.2d 640; see also D'Angelo v. United States (1978), 456 F.Supp. 127; Cf. Rule 602, M.R.Evid. The best evidence rule remains inapplicable when a witness testifies about personal knowledge of a matter, regardless whether the same information may be contained in an inadmissible writing.

7

Moreover, our rules of evidence permit witnesses to use writings to refresh their memory while testifying. Rule 612, M.R.Evid.

After reviewing the record, we conclude that Watkins testified from personal knowledge and experience and that his concurrent use of the summary of contents from the wall calendar was not reversible error. The summary's contents, as stated by Watkins during oral testimony, merely set forth the number of days he trained the horses and the resulting charges which were incurred by the Williamses. Neither party disputes the length of time the horses were in Watkins' possession and the jury found Watkins' charge of $18 per day per horse to be a reasonable fee given the facts of this case and the location in which the training occurred.

Indeed, the Williamses did not offer any significant rebuttal evidence concerning damages; after hearing Watkins' testimony the jury was free to find that the Williamses owed him $20,191. Section 26-1-301, MCA. We conclude that the District Court did not commit reversible error in permitting Watkins to testify about the amount of damages he suffered.

## ISSUE TWO

Did the court err in determining that evidence about circumstances surrounding Watkins' alleged criminal arrest was inadmissible?

On Watkins' motion in limine, the court excluded evidence concerning Watkins' alleged arrest. After reviewing the record, we hold that the court did not err in granting the motion in limine.

ISSUE THREE

Did the court err in finding that the parties' attempted accord agreement was not satisfied and therefore did not extinguish their original oral contract?

Originally the court, on Watkins' motion in limine, excluded all evidence pertaining to the parties' attempted accord agreement because the court found that the agreement was not satisfied. During trial, however, Watkins "opened the door" to the subject by testifying that he had attempted to resolve the parties' differences by entering into an accord with the Williamses. The Williamses then presented evidence of the accord, specifically alleging that they were justified in not completing the accord when they found Bodella in poor condition. The jury disregarded the Williamses' accord and satisfaction argument and returned a verdict in favor of Watkins.

The Williamses argue that the court's initial exclusion of the accord and satisfaction affirmative defense was reversible error because it prejudiced their case. Watkins counters by asserting that the Williamses were permitted a generous latitude in which to present their accord and satisfaction defense, and that the jury was justified in returning its verdict given the evidence and testimony presented at trial.

An accord is "an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." Section 28-1-1401, MCA. Satisfaction is "acceptance by the creditor of the consideration of

9

an accord." Section 28-1-1402, MCA. Where there is no satisfaction, the original debt is not extinguished and the debtor remains liable for damages. Goggins v. Bookout (1963), 141 Mont. 449, 378 P.2d 212; see also Hetherington v. Ford Motor Co. (1993), 257 Mont. 395, 849 P.2d 1039.

We affirm the District Court's determinations that the Williamses did not satisfy the accord and that evidence of the failed attempt at settling their differences was properly initially excluded from trial pursuant to Rule 408, M.R.Evid. Although the Williamses initially tendered two $2,500 checks to Watkins and normally a check constitutes valid consideration, see § 28-2-801, MCA, the court, when determining when an accord has been satisfied, will look to substance over form. Section 1-3-219, MCA. The court here was justified in determining that the accord was not satisfied because the Williamses stopped payment on the second check and then repeatedly refused to tender another to Watkins. We conclude that the court did not err.

### ISSUE FOUR

Did the court err by excluding evidence concerning the alleged forgery of a bill of sale?

During trial, in support of their accord and satisfaction defense, the Williamses attempted to introduce evidence of an alleged theft or sale of their horse trailer. They asserted that the horse trailer belonged to them, but was in Watkins' possession, when it disappeared. They further asserted that Watkins forged a bill of sale relating to the horse trailer. Being caught with

10

forgery, contend the Williamses, was the reason that Watkins agreed to the terms of the parties' accord. The court excluded the evidence of the alleged forgery as being irrelevant and outside of the scope of the Williamses' pleadings; the court did, however, permit the Williamses to inquire about the horse trailer during trial.

A court has authority or jurisdiction to decide issues as they are framed by the parties' pleadings. Old Fashion Baptist Church v. Dep't of Revenue (1983), 206 Mont. 451, 671 P.2d 625. The parties may plead by complaint, answer or counterclaim, among other things. Rule 7(a), M.R.Civ.P.

Rule 13(a), M.R.Civ.P., provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

Permissive counterclaims, those which do not arise out of the same transaction, may also be pled by a defendant. Rule 13(b), M.R.Civ.P. Additionally, if a party has erroneously omitted a counterclaim, the party may, with the leave of court, set up the counterclaim by amendment. Rule 13(f), M.R.Civ.P.

The Williamses raised two issues in their counterclaim against Watkins: That the parties' original agreement was extinguished by an accord and satisfaction, and that Watkins owed the Williamses damages for mistreating Bodella. No pleading asserts that Watkins forged a bill of sale; the Williamses did not at any time attempt to amend the pleadings to reflect a forgery claim.

11

After reviewing the record, we conclude that the court did not err in excluding the forgery evidence because it was irrelevant to this debt action and because it was outside the scope of the issues presented in the parties' pleadings.

ISSUE FIVE

Did the court err in excluding from evidence a letter, introduced by the Williamses at trial, which purported to contain material terms of compensation for Watkins' horse training services?

The Williamses' proposed evidence, a letter which purported to set out the oral agreement of the parties concerning compensation for Watkins' horse training services, was first introduced during trial.

Counsel for Watkins objected to the letter because it had not been produced during discovery. The letter was not listed in the parties' exhibit lists and was not listed in the court's pretrial order. Counsel for the Williamses stated that he had only seen the letter a few days prior to trial, and that he thought the letter had been listed as an exhibit. After discussion, the court sustained Watkins' objection and instructed the jury not to consider the document.

The Williamses argue that the letter was wrongly excluded from evidence because it was introduced in rebuttal to Watkins' oral testimony. Watkins states that the Williamses failed to make an offer of proof on the document and that the court appropriately excluded it from evidence under the circumstances in this case.

12

The District Court is in the best position to determine whether a party has violated the rules of civil procedure. Dassori v. Roy Stanley Chevrolet Co. (1986), 224 Mont. 178, 728 P.2d 430. Failure to disclose evidence during discovery may lead to sanctions. Vehrs v. Piquette (1984), 210 Mont. 386, 684 P.2d 476. As a sanction, the court may limit one party's testimony and evidence, according to Rule 37, M.R.Civ.P. Owen v. F. A. Buttrey Co. (1981), 192 Mont. 274, 627 P.2d 1233.

The court issued its scheduling order on March 31, 1992, and stated that:

> Copies of proposed exhibits shall be submitted to the court at least five (5) days prior to the trial date. A fully completed Record of Exhibit forms [sic] from all parties along with witness lists setting forth the general order in which the witnesses will appear and testify is required.

The Williamses did not submit the letter to the court prior to trial. Also, the Williamses failed to give the letter to Watkins in response to Watkins' requests for discovery. We conclude that the court did not err in refusing to admit the letter into evidence. Affirmed.

_____
                Chief Justice

13

We concur:

_John Conway Harrison_

_Troy Trueville_

_Karla M. Gray_

_[signature]_

Justices

June 2, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Kevin E. Vainio
Attorney at Law
27 W. Park St.
Butte, MT  59701

Gilbert U. Burdett
Burdett Law Firm, P.C.
2929-3rd Ave. No., Ste. 325
Billings, MT  59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy