FILED

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0583

DA 15-0583

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 201

TIDYMAN'S MANAGEMENT SERVICES
INC., a Washington corporation; LENORA
DAVIS BATEMAN, VICKI EARHART,
CAROL HEALD, THERESA YOUNGQUIST,
BARBARA GAUSTAD, SHARON YOUNG,
DIANE MOLES, KYLE BAILEY, MARK
RADEMAN, DREW OLSEN, CHADNEY
SAWYER, THOMAS NAGRONE, DAN
NAGRONE, DARRELL NACCARATO, PAT
DAHMEN, JANELLE SELLS, TERRI
ORTON, WILLIAM EVANSON, BILL
EVANSON, TAMMY EVANSON, LARRY
THOMPSON, JASON GUICE, JAMIE GUICE,
LAURA SQUIBB, RICK BAILLIE, JEFFREY
TUCKER, AMY TUCKER, MARYBETH
WETSCH, LAURA STOCKTON, JERRY
STREETER, CLARA KUHN, NANCY
McDONALD, TED NUXOLL, CINDY
NUXOLL and DEAN CARLSON, individuals,

        Plaintiffs and Appellees,

    v.

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA and JOHN DOES 1-10,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DV 10-695
                  Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James H. Goetz, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana

                Robert F. James, Mary K. Jaraczeski, Ugrin, Alexander, Zadick &
                Higgins, P.C., Great Falls, Montana

Timothy R. Macdonald, Nathaniel J. Hake, Arnold & Porter LLP, Denver Colorado,
(*Attorneys for National Union Fire Insurance Co. of Pittsburgh, PA*)

For Appellees:

G. Patrick HagEstad, Milodragovich, Dale & Steinbrenner, P.C., Missoula, Montana
(*Attorney for Individual Plaintiffs, Individual Appellees*)

Michael G. Black, Black Law Office, Helena, Montana
(*Attorney for Tidyman's Management Services, Inc.*)

W. William Leaphart, Attorney at Law, Helena, Montana

Gregory S. Munro, Attorney at Law, Missoula, Montana
(*Co-Counsel for Plaintiffs, Appellees*)

For Amicus Curiae Montana Trial Defense Lawyers:

Paul R. Haffeman, Davis, Hatley, Haffeman & Tighe, Great Falls, Montana

Martha Sheehy, Sheehy Law Firm, Billings, Montana

---

Submitted on Briefs: May 18, 2016

Decided: August 23, 2016

Filed:

_____
Clerk

2

Justice Patricia Cotter delivered the Opinion of the Court.

¶1  In *Tidyman's Management Services v. Davis* (*Tidyman's I*), 2014 MT 205, 376 Mont. 80, 330 P.3d 1139, we affirmed the District Court's finding that National Union Fire Insurance (NUFI) breached its duty to defend its insureds, Davis and Maxwell, but we reversed the District Court's approval of a stipulated settlement between Davis and Maxwell and Plaintiffs for $29 million. We remanded for a hearing on the reasonableness of the settlement amount. The District Court conducted a reasonableness hearing, and again approved the stipulated settlement. NUFI appeals. We remand for a second reasonableness hearing.

## ISSUES

¶2  We restate the issues on appeal as follows:

¶3  Did the District Court err in using a "reliable evidence" test to assess the reasonableness of the stipulated judgment?

¶4  Did the District Court err by not deducting from the $29 million judgment the amount paid out to ESOP participants following Tidyman's merger with SuperValu?

¶5  Did the District Court err in awarding prejudgment interest from January 4, 2013?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6  This is the second time this case has come before us. We set forth the underlying facts in *Tidyman's I*, and we will not repeat them here. In *Tidyman's I*, we affirmed the District Court's finding that NUFI unjustifiably refused to defend its insured, Davis and Maxwell, and was therefore estopped from denying coverage. *Tidyman's I*, ¶ 33. However, we reversed the District Court's entry of summary judgment to the extent it approved a stipulated judgment of $29 million, and remanded for the District Court to hold a hearing to assess the reasonableness of the settlement amount. *Tidyman's I*, ¶ 44. On remand, we deferred to the District Court to set

3

the parameters of the reasonableness hearing, and to determine whether and to what extent further discovery was warranted. *Tidyman's I*, ¶ 44. We also instructed that the burden of establishing the unreasonableness of the stipulated judgment would rest with NUFI. *Tidyman's I*, ¶ 44.

¶7    The District Court determined that additional but limited discovery was necessary prior to a hearing on reasonableness, so it opened discovery for the narrow purpose of obtaining information regarding the reasonableness of the underlying judgment. The District Court then held a reasonableness hearing on January 28-30, 2015. Following the hearing, the District Court concluded that "Maxwell and Davis were justified in settling for the amount of $29 million based [on] their knowledge of Plaintiffs' claims and their exposure to financial ruin created by NUFI's failure to defend." The District Court therefore found that NUFI had not borne its burden to prove the stipulated judgment was unreasonable, and entered judgment against NUFI for $29 million. NUFI appeals.

## STANDARD OF REVIEW

¶8    This Court reviews de novo issues of law, including a district court's decision about which legal standard to apply in assessing the reasonableness of a stipulated judgment. *Tidyman's I*, ¶ 13; *see e.g. Seltzer v. Morton*, 2007 MT 62, ¶ 152, 336 Mont. 225, 154 P.3d 561 (holding that we review de novo a district court's application of certain "guideposts" in assessing whether a jury's punitive damages verdict is "grossly excessive"). The decision to grant or deny prejudgment interest is also reviewed de novo. *Tidyman's I*, ¶ 13.

4

¶9   *Did the District Court err in using a "reliable evidence" test to assess the reasonableness of the stipulated judgment?*

¶10   In *Tidyman's I*, we concluded that "further consideration is necessary to determine whether the 29 million dollar stipulated settlement is reasonable, in light of the questions NUFI has raised." *Tidyman's I*, ¶ 44.  Among the questions raised by NUFI were whether the $29 million figure was unreasonable "because it was based only on unsworn opinions of experts whom plaintiffs retained and paid and who have never been cross-examined by [NUFI's] counsel" (internal quotations omitted); because "no buyer had been identified at the price TMSI's financial advisor, Zachary Scott, suggested the corporation might bring if sold to another chain—the figure on which the 29 million dollars is based"; because "the settlement amount is magnitudes greater than the amount for which the plaintiffs had settled with other directors and the amount the plaintiffs had offered Davis himself in settlement"; and because "the plaintiffs' own numbers reveal that Zachary Scott opined that the value of the corporation as a standalone entity was 11 million dollars." *Tidyman's I*, ¶ 42.  With these questions in mind, we reversed the District Court's entry of summary judgment to the extent it approved of the $29 million sum, and remanded for a hearing focused on the reasonableness of the settlement amount.  *Tidyman's I*, ¶ 44.

¶11   On remand, the District Court articulated its own subjective standard for assessing the reasonableness of the settlement amount:

> To determine whether the stipulated settlement is within the range of reasonableness, the Court has considered reasonableness from the perspective of the insured at the time of the stipulation, whether the information relied upon possessed sufficient indicia of reliability and whether the damages represented might naturally have been expected to result from the breach of the duty to defend.

Over the course of a three day hearing, the District Court received evidence and testimony from Plaintiffs and NUFI. Although the District Court allowed testimony from NUFI's expert that the stipulated settlement was not reasonable because it exceeded his assessment of the value of the company prior to the insurer's breach of the duty to defend, the District Court found that this perspective "fail[ed] to account for the measure of damages for the breach of the duty to defend." The District Court, citing *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 35, 372 Mont. 191, 312 P.3d 403, concluded that "[w]here an insurer has left its insured on its own to challenge liability, the insurer should not be able to reach back and interject itself in a controversy it has sidestepped to void a deal the insured has entered into to eliminate personal liability." Reasoning that NUFI had lost the right to litigate the merits of the underlying case, the court therefore largely precluded the parties from conducting discovery or introducing evidence on matters related to the merits of the case.

¶12 However, as NUFI argues on appeal, by failing to consider the merits and value of the underlying case in assessing the reasonableness of the settlement amount, the District Court failed to comply with our instructions on remand. Instead of considering the challenges to reasonableness raised by NUFI and highlighted in our opinion in *Tidyman's I*, the District Court based its conclusion that the settlement was reasonable on its assessment that "[t]he materials relied up[on] by Plaintiffs and Maxwell and Davis possess sufficient indicia of reliability." We have previously stated that "[t]he insurer, even when in breach of its obligations to its insured, is entitled to have the district court make a determination of the reasonableness of a settlement entered by the insured." *Abbey/Land LLC v. Interstate Mechanical, Inc.*, 2015 MT 77, ¶ 12, 378 Mont. 372, 345 P.3d 1032 (citing *Tidyman's I*, ¶ 41). The District Court did not actually assess the reasonableness of the settlement in this case, but rather sought to determine whether the $29

million amount had some grounding in reliable evidence from the perspective of Davis and Maxwell. We therefore remand this case for a second hearing on the reasonableness of the stipulated settlement. On remand, the District Court shall assess reasonableness using the standard set forth below.

¶13 NUFI and amicus curiae Montana Defense Trial Lawyers urge this Court to announce a requirement that "the settlement amount be analyzed from the perspective of the *objective* merits of the case and not from the *subjective* perspective of whether the insured was justified in accepting a release of liability in exchange for whatever the plaintiff requested" (emphasis in original). In support of this approach, NUFI cites cases from several of our sister states that analyze the merits of the underlying case, the plaintiff's theory of liability and damages, the strength of available defenses, and the risks and expenses to both parties of continued litigation in order to determine the reasonableness of a stipulated settlement amount. *See e.g. Bird v. Best Plumbing Grp., LLC*, 287 P.3d 551, 556 (Wash. 2012); *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 613 (Alaska 2003); *Himes v. Safeway Ins. Co.*, 66 P.3d 74, 85 (Ariz. Ct. App. 2003); *Associated Wholesale Grocers v. Americold Corp.*, 934 P.2d 65, 87 (Kan. 1997). However, none of the cases cited by NUFI involved an insurer's breach of the duty to defend its insured. NUFI is untroubled by this dissimilarity; according to NUFI, the fact that an insurer breached its duty to defend its insured is not relevant to an assessment of the value of the underlying case.

¶14 All parties agree that a reasonableness hearing should be conducted objectively from the point of view of a prudent person in the position of the insured defendant. *See e.g. Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982). But as Plaintiffs and amicus curiae Montana Trial Lawyers Association point out, in a case in which there has been a breach of the duty to defend, such a defendant is no longer an insured defendant and is faced with personal responsibility for a

7

potentially very large sum. We agree with Plaintiffs that a breach of the duty to defend is a factor that a prudent person in the position of the defendant would consider when determining what settlement amount is acceptable to him or her. In other words, an objective standard of reasonableness should account for a prudent assessment of the merits and value of the plaintiff's case, but also for the position in which the defendant has been left following an insurer's breach of the duty to defend. No prudent defendant would fail to consider the latter circumstance. On the other hand, it should not be the court's objective to further punish the insurer for its failure to defend its insured. The insurer has already suffered the consequences of its failure to defend by having lost the right to invoke insurance contract defenses as well as the right to assert its policy limits.

¶15    On remand, the District Court shall employ an objective standard for assessing reasonableness. We borrow the Minnesota Supreme Court's articulation of such a standard— "The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Miller*, 316 N.W.2d at 735—but we note that in cases such as the one before us, a "reasonably prudent person in the position of the defendant" does not have the benefit of insurance coverage. Therefore, in assessing the reasonableness of a stipulated settlement when there has been a breach of the insurer's duty to defend, a district court should objectively consider both the merits of the underlying case and the value to a prudent uninsured defendant of confessing judgment in exchange for a covenant not to execute. If after applying this objective standard the District Court finds $29 million to be a reasonable settlement amount, it shall enter findings of fact establishing the reasonableness and

judgment in favor of Plaintiffs for $29 million. If the District Court finds $29 million to be an unreasonable amount, it shall enter findings of fact and conclusions of law to that effect and reject the settlement.

¶16 On a final note, although the District Court retains discretion to determine what evidence to admit or refuse in a reasonableness hearing, it cannot refuse to consider material and relevant evidence. *Cartwright v. Equitable Life Assurance Soc'y of the United States*, 276 Mont. 1, 19, 914 P.2d 976, 987-88 (1996) (citing M. R. Evid. 401, 402). We determined in *Tidyman's I* that the questions NUFI raised about the valuation of the corporation are relevant to an assessment of the reasonableness of the stipulated settlement, so the District Court should allow additional discovery on and consider such evidence during the second reasonableness hearing. *Tidyman's I*, ¶¶ 42, 44.

¶17 In his Dissent, Justice Wheat argues that remand for another reasonableness hearing is not necessary because the court listened to extensive testimony on the valuation of the company during the reasonableness hearing. It is true that NUFI presented such testimony, but the court rejected the valuation testimony offered by its witnesses because it "fail[ed] to account for the measure of damages for the breach of duty to defend." Because we previously found that NUFI was estopped from denying coverage for unjustifiably refusing to defend its insureds, any measure of damages for breach of the duty to defend has no place in an ensuing reasonableness analysis. The court said it would consider reasonableness "from the perspective of the insured at the time of the stipulation," and indeed, it was only such evidence to which the court gave credence. As noted in ¶ 11 but side-stepped by both Dissents, the District Court concluded that NUFI had lost the right to litigate the merits of the underlying case. What we are directing the court to do on remand is determine value based both on an objective determination of where the

9

stipulated settlement is within a reasonable range of what an arms'-length negotiation would have produced and the value to a prudent uninsured defendant of confessing judgment. The court erred as a matter of law in subjectively considering valuation solely from the perspective of the uninsured defendants.

¶18     *Did the District Court err by not deducting from the $29 million judgment the amount paid out to ESOP participants following Tidyman's merger with SuperValu?*

¶19     NUFI argues that the $29 million judgment is "based on impermissible double counting." Some retirees who retired after Tidyman's 1998 merger with SuperValu received payouts from the employee stock ownership plan (ESOP), and some of those retirees are now plaintiffs in this case. NUFI alleges that these retirees are "double counting" damages by accepting the ESOP payments and seeking damages in this case. NUFI argues that the $29 million judgment should be reduced by at least $7 million, the minimum amount paid out to ESOP participants after the merger. Plaintiffs counter that NUFI's argument is based upon a "mischaracterization of the relationships between the parties and the different Tidyman's entities." According to Plaintiffs, $29 million is the amount of damage done by Davis and Maxwell to TMSI (the entity formed in the merger), and whether retirees are entitled to any of that money as employee owners of the company is a wholly separate issue governed by the terms of the ESOP and federal ERISA law. We agree with Plaintiffs.

¶20     By definition, a stipulated or consent judgment is not a court's or a jury's calculation of actual damages to which individual plaintiffs are entitled, but rather the amount for which two parties have freely agreed to settle a claim. As we have said before, "[a] consent judgment is 'a judgment, the provision and terms of which are settled and agreed to by the parties to the action.' A judgment by consent or stipulation of the parties is construed as a contract between them embodying the terms of the judgment. It operates to end all controversy between the parties,

10

within the scope of the judgment." *First Bank, (N.A.) v. District Court for Fourth Judicial Dist.*, 226 Mont. 515, 523, 737 P.2d 1132, 1137 (1987) (quoting Black's Law Dictionary (5th ed.) at 436); *see also Linder v. Missoula County*, 251 Mont. 292, 296, 824 P.2d 1004, 1004 (1992). Indeed, this reality is one of the reasons courts conduct a reasonableness hearing in the case of a stipulated settlement: "in these types of negotiations . . . there is no assurance that the settlement represents a proper calculation of actual damages." *Tidyman's I*, ¶ 40.

¶21 The $29 million judgment in this case is a stipulated judgment, freely agreed to by Davis and Maxwell and Plaintiffs, and approved by the District Court. While the stipulated judgment is subject to an overall reasonableness assessment, it was not the result of a precise damages calculation performed by the District Court, so it does not account for deductions, credits, or offsets claimed by the insurer but not stipulated to by both parties. The question is simply "whether the settlement amount stipulated to is reasonable." *Tidyman's I*, ¶ 40. On remand, and after considering the valuation evidence presented, the District Court may decide to take into account the ESOP payouts in assessing the reasonableness of the settlement amount. However, because we are addressing a settlement here and not a trial recovery subject to statutory offsets, we conclude that the District Court did not err in declining to engage in the reductions and collateral source offsets urged by NUFI that are typical of post-trial adjustments in tort recovery actions.

¶22 *Did the District Court err in awarding prejudgment interest from January 4, 2013?*

¶23 We said in *Tidyman's I* that "the District Court correctly determined the plaintiffs were entitled to pre-judgment interest beginning on January 4, 2013, when the court approved the stipulated settlement agreements and entered judgment in the plaintiffs' favor." *Tidyman's I*, ¶ 53. Following our remand and the first reasonableness hearing, the District Court complied

11

with our instructions and granted the Plaintiffs prejudgment interest from January 4, 2013. However, we reached the conclusion that Plaintiffs were entitled to prejudgment interest from the day the $29 million stipulated settlement was approved even though we reversed the judgment approving the settlement amount and remanded the case for a reasonableness hearing. *Tidyman's I*, ¶ 50. This was in error. Plaintiffs would have been entitled to postjudgment interest, not prejudgment interest, from the day the District Court approved the settlement, but only if we had affirmed the amount of the judgment. Section 25-9-205, MCA; M. R. App. P. 19(4); *Tipp v. Skjelset*, 1998 MT 263, ¶¶ 16-19, 291 Mont. 288, 967 P.2d 787.

¶24 We take this opportunity to clarify that Plaintiffs are not entitled to prejudgment interest from January 4, 2013, because interest accruing after that date—the date of the court's judgment—would by definition be postjudgment and not prejudgment interest. Rather, Plaintiffs may be entitled to postjudgment interest according to the instructions below.

¶25 The Montana Rules of Appellate Procedure provide that "[i]f a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was rendered or made in the district court," but if, as is the case here, "a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." M. R. App. P. 19(4). We have instructed before that

> In those cases in which a money judgment rendered in the district court is reversed, modified, or vacated on appeal, with the consequence that the district court is directed to enter an entirely new judgment no portion of which is discreetly identifiable from the original verdict or judgment, then interest on the new judgment shall begin to accrue only from the date the new judgment is entered on remand pursuant to this Court's direction.

*Woods v. Burlington N. & Santa Fe Ry. Co.*, 2004 MT 384, ¶ 10, 325 Mont. 106, 104 P.3d 1045.

Therefore, if following our remand and a second reasonableness hearing the District Court

approves the stipulated settlement, Plaintiffs will be entitled to postjudgment interest from the day of the new judgment, but not from the days on which the District Court approved the settlement the first and second times. Plaintiffs are not entitled to prejudgment interest, and we and the District Court erred in so holding.

**CONCLUSION**

¶26 For the foregoing reasons, we remand the case to the District Court for a second hearing to determine the reasonableness of Davis and Maxwell's decision to settle with the Plaintiffs for $29 million in exchange for a covenant not to execute.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

Justice James Jeremiah Shea, concurring in part and dissenting in part.

¶27 I concur with the Court's disposition of Issues 2 and 3. I also agree with the standard the Court establishes for assessing the reasonableness of a stipulated settlement when there has been a breach of the duty to defend. Opinion, ¶ 15. However, I agree with Justice Wheat's observation that the standard the Court articulates here is only a slight degree of separation from the standard applied by the District Court in the first reasonableness hearing. I also disagree with the Court's conclusion that the District Court failed to consider the challenges to reasonableness raised by NUFI and highlighted

13

in our opinion in *Tidyman's I*. Therefore, I dissent from the Court's conclusion on Issue 1 that this case should be remanded for a second reasonableness hearing.

¶28 The Court begins its analysis of Issue 1 by noting that in *Tidyman's I* we concluded that "further consideration is necessary to determine whether the 29 million dollar stipulated settlement is reasonable, in light of the questions NUFI has raised." Opinion, ¶ 10 (quoting *Tidyman's I*, ¶ 44). The Court then states that "[i]nstead of considering the challenges to reasonableness raised by NUFI and highlighted in our opinion in *Tidyman's I*, the District Court based its conclusion that the settlement was reasonable on its assessment that '[t]he materials relied up[on] by Plaintiffs and Maxwell and Davis possess sufficient indicia of reliability.'" Opinion, ¶ 12. In fact, the District Court specifically noted its obligation to consider the reasonableness of the stipulated settlement in light of the challenges raised by NUFI and highlighted in *Tidyman's I*, 4th Judicial Dist. Ct., Or., p. 4 (May 12, 2015) (hereinafter, "Order"), and addressed those challenges in Findings of Fact 89 through 92, Order, pp. 39–42. I believe the Court's characterization of the District Court's reasonableness assessment gives short shrift to the work the District Court did in the first reasonableness hearing.

¶29 To the extent that the Court suggests that the standard applied by the District Court in the first reasonableness hearing was deficient as compared to the standard the Court articulates in this Opinion, I submit the differences are, at most, semantic. In the first reasonableness hearing, the District Court applied the following standard for assessing the reasonableness of the settlement amount:

14

> To determine whether the stipulated settlement is within the range of reasonableness, the Court has considered reasonableness from the perspective of the insured at the time of the stipulation, whether the information relied upon possessed sufficient indicia of reliability and whether the damages represented might naturally have been expected to result from the breach of the duty to defend.

Order, p. 7. The Court criticizes this standard as "subjective" and instructs the District Court to employ the following standard when conducting yet another reasonableness hearing on remand:

> [I]n assessing the reasonableness of a stipulated settlement when there has been a breach of the insurer's duty to defend, a district court should objectively consider both the merits of the underlying case and the value to a prudent uninsured defendant of confessing judgment in exchange for a covenant not to execute.

Opinion, ¶ 15. A comparison of the two standards, however, evinces little, if any, substantive difference.

¶30 Broken down to its discrete elements, the reasonableness standard the District Court applied in the first reasonableness hearing has three parts: (1) consider reasonableness from the perspective of the insured at the time of the stipulation; (2) assess whether the information relied upon in arriving at the stipulated settlement amount possessed sufficient indicia of reliability; and (3) determine whether the damages represented might naturally have been expected to result from the breach of the duty to defend. So how do these elements compare to the standard the Court instructs the District Court to apply in the second reasonableness hearing?

¶31 First, if considering reasonableness from the perspective of the insured at the time of the stipulation is a subjective standard, I fail to see how it is any more subjective than

15

determining reasonableness by considering "the value to a prudent uninsured defendant of confessing judgment in exchange for a covenant not to execute," which is what the Court instructs the District Court to do in the second reasonableness hearing. The perspective that the District Court considered in the first reasonableness hearing was Maxwell and Davis's perspective as defendants who were left without "the benefit of insurance coverage" due to NUFI's breach, a factor this Court says is an appropriate consideration, Opinion, ¶ 15. The District Court considered Maxwell and Davis's perspective "at the time of the stipulation," because that is the time when, to borrow the language the Court uses in the new standard, Maxwell and Davis "confess[ed] judgment in exchange for a covenant not to execute." I view these elements as substantively the same.

¶32 Second, the District Court considered whether the information relied upon in arriving at the stipulated settlement possessed "sufficient indicia of reliability." Again, I view this as substantively the same as the Court's directive that the District Court should "objectively consider . . . the merits of the underlying case." The information relied upon by the parties in arriving at the stipulated settlement included the merits of the underlying case, at least as those merits had been developed by the time Maxwell and Davis "confess[ed] judgment in exchange for a covenant not to execute." In that regard, it should be borne in mind that among the "benefit[s] of insurance coverage" that Maxwell and Davis were denied because of NUFI's breach was the provision of defense costs necessary to develop the merits of the underlying case. Since NUFI's breach deprived Maxwell and Davis of the means and wherewithal to develop the merits of their defense,

they had to play the cards they were dealt. Nevertheless, the District Court recognized that it would be unreasonable to allow Maxwell and Davis to just sign off on any amount in exchange for a covenant not to execute. This is why the District Court objectively evaluated the information upon which the settlement was based to confirm that it "possessed sufficient indicia of reliability."

¶33 Finally, the District Court assessed "whether the damages represented might naturally have been expected to result from the breach of the duty to defend." By incorporating this element into its reasonableness analysis, the District Court was merely incorporating the well-established principle that when an insurer breaches the duty to defend, it is liable for all damages flowing from the breach, including consequential damages, which we have defined as damages "such as might naturally be expected to result from" the breach. *Freyer*, ¶ 42 (quoting *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 64, 341 Mont. 33, 174 P.3d 948). This third element does not have a corollary requirement in the standard the Court instructs the District Court to use in the second reasonableness hearing. I would submit, therefore, that the District Court's incorporation of a consequential damages element if anything made the District Court's reasonableness standard more demanding than the standard it is now instructed to use in the second reasonableness hearing. Therefore, I cannot see how this provides a basis for reversal.

¶34 After this matter was remanded the first time, the District Court followed our instructions and allowed additional discovery, conducted a three day reasonableness hearing, and then issued a thorough Order in which it answered the questions that were

set forth in *Tidyman's I*. Now, the Court remands for a second reasonableness hearing with instructions to apply a standard I find to be either substantively the same as, or less stringent than, the standard the District Court applied during the first reasonableness hearing. Therefore I dissent as to the Court's resolution of Issue 1. I concur with the Court's resolution of Issues 2 and 3.

/S/ JAMES JEREMIAH SHEA

Justice Michael E Wheat, concurring in part and dissenting in part.

¶35 I concur with the Court's disposition of Issues 2 and 3. However, I disagree with the Court's conclusion on Issue 1 that this case should be remanded for a second reasonableness hearing. In my opinion the Court is improperly interjecting its judgment in the place of the District Court by requesting the District Court repeat what has already been accomplished.

¶36 In *Tidyman's I* we directed the District Court to conduct a "hearing focused on the reasonableness of the settlement amount," with the burden of establishing unreasonableness of the judgment on NUFI. *Tidyman's I*, ¶¶ 44, 50. We directed the court to set the parameters of the hearing at its discretion as to the need for the further discovery of pertinent information related to the limited scope of the remand. *Tidyman's I*, ¶ 44. The directive we gave to the District Court was to follow the mandate of § 27-1-302, MCA, that settlement amounts in civil cases must be reasonable. We were explicit and clear that in this case, where the insurer elected to deny coverage and breached its duty to defend its insureds, no further analysis of whether there was

coverage under the policy was necessary or acceptable under the law. *Tidyman's I*, ¶¶ 28, 30, 33. ("If we were to hold the District Court in error for failing to analyze coverage . . . we would be providing insurers with an avenue to circumvent the clear requirement imposed by our precedent that where the insurer believes a policy exclusion applies, it should defend under a reservation of rights and seek a determination of coverage through a declaratory judgment action." *Tidyman's I*, ¶ 28.) We determined that the District Court was obligated under the law to determine *only* the substantive reasonableness of the stipulated settlement amount *without* evaluating the underlying policy coverage or any inquiry into potential collusion, as we determined it did not exist in this case. *Tidyman's I*, ¶¶ 28, 50.

¶37 The Court now articulates a standard borrowed from the Minnesota Supreme Court to be used in this case to determine whether a settlement amount is reasonable. Opinion, ¶ 15. This standard includes the consideration of the liability and damage aspects of the Plaintiffs' case, including the risks of going to trial, and in this case, a consideration of the insurer's breach of its duty to defend its insureds. Opinion, ¶ 15. Yet, we have already determined that the settlement should be given the presumption of reasonableness, and the burden is on defendant NUFI to show unreasonableness. *Tidyman's I*, ¶ 41. The Court now asks the District Court to inquire into NUFI's questions of unreasonableness, which are almost exclusively based on issues involving the valuation of the corporation, under what it calls an objective standard when the court already conducted a three-day hearing and listened to testimony on those very issues.

19

¶38     We have often repeated the maxim that district courts have broad discretion to make determinations related to evidence, which we rightfully review only for the abuse of this discretion. *Watkins v. Williams*, 265 Mont. 306, 311, 877 P.2d 19, 21-22 (1994). The abuse of discretion inquiry is "not whether this Court would have reached the same decision, but, whether the district court acted *arbitrarily without conscientious judgment* or *exceeded the bounds of reason*." *Chipman v. Northwest Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193 (quoting *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625) (emphasis added).

¶39     Even if an insurer breaches its duty to its insured, it is still entitled to have a district court make a determination of the reasonableness of a settlement; however the settlement is presumed to be reasonable *unless* the insurer is able to show evidence of the lack of reasonableness. *Abbey/Land LLC*, ¶ 17; *Tidyman's I*, ¶ 41. In this case, the District Court conducted a three-day hearing, and heard and evaluated the evidence presented by both sides. The evidence included testimony from various experts offered by both sides regarding the valuation of the company. NUFI has consistently argued that without a buyer the settlement amount in this case is a pie-in-the-sky scenario and therefore unreasonable. However, the court heard testimony that the existence of a buyer is not the determinative factor in the valuation of a company. The Plaintiffs presented evidence, NUFI presented evidence, and the court then evaluated the evidence to determine that NUFI did not meet its burden to overcome the presumption of reasonableness. But this Court is now asking the District Court to go back once again, sift through the same evidence and apply a new standard, which in my opinion in this

case, is only a slight degree of separation from what the court has already done pursuant to our direction upon initial remand. Because this is a stipulated settlement the court has one of two options: accept or reject the settlement amount. Opinion, ¶ 15. We have already determined that there is no proof of collusion between the Plaintiffs and Maxwell and Davis, and the record shows that the settlement amount was derived from the conservative end of an independent valuation of the company—the assessment that was available to defendants Maxwell and Davis at the time of the settlement negotiations.

¶40 The Court now requires the District Court to employ a new objective standard—whether a reasonably prudent person in the position of the defendant would have settled, taking into consideration the liability and damage aspects of the claims, the risks of going to trial, and the lack of insurance coverage—but to what end? Not to conduct a trial on the merits of Plaintiffs' claims and allow NUFI to reach back and interject itself into the litigation it chose to avoid when it left its insureds on their own to challenge the litigation, in direct contravention of our case law. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 28, 321 Mont. 99, 90 P.3d 381. Nor to make a determination of fraud or collusion, in direct contravention of our findings in *Tidyman's I*. Nor to independently monetize each individual aspect of the considerations included in the objective standard, which would be an absurd and untenable exercise. NUFI was given the opportunity to provide its best evidence of the unreasonableness of the stipulated judgment and it simply failed to meet its burden. In my view the Court is in error by effectively interjecting its judgment into this case and allowing NUFI a second bite at the apple to attempt to substantiate the arguments it has already failed to adequately

21

substantiate. I believe the Court has improperly lost sight of the settlement's presumption of reasonableness.

¶41 The Court also indicates using the proposed objective standard will avoid further punishing the insurer for its failure to defend its insureds because the "insurer has already suffered the consequences of its failure to defend by having lost the right to invoke insurance contract defenses as well as the right to assert its policy limits." Opinion, ¶ 14. While I agree that the District Court should not seek to further punish NUFI, an additional consequence of its failure to defend Maxwell and Davis is the loss of its ability to negotiate the settlement at the time its insureds entered into a settlement agreement with the Plaintiffs. There is little doubt that if NUFI would have chosen differently and opted to defend Maxwell and Davis that the settlement negotiations would have ended with a different result. To that I reiterate the sentiment we noted in *Tidyman's I*: so what? Without collusive wrongdoing, the result is a consequence of NUFI's failure to defend its insureds. *Tidyman's I*, ¶ 48. I believe with this Opinion the Court is now allowing NUFI too great an opportunity to meddle in the settlement negotiations it was excluded from by its own choice. In my opinion, the District Court followed our directive in *Tidyman's I* to allow NUFI an opportunity to rebut the presumption of reasonableness of the stipulated judgment, where we explicitly allowed it to set the parameters of the hearing including conducting further discovery, and reached a conclusion that was neither arbitrary, nor exceeded the bounds of reason, and should be affirmed. *Tidyman's I*, ¶ 44. It is the District Court's duty, not this Court's, to determine the facts, and weigh the credibility of the evidence presented before it to make reasoned findings and we should not supplant its

judgment with our own. If the Court desires to adopt a new objective standard for district courts to apply in cases such as these, *at most* we should do so in this Opinion and find any error that occurred on remand to be harmless because the court did what we asked of it in *Tidyman's I* and the result did not create reversible error.

¶42 For the foregoing reasons, I respectfully dissent from the Court's disposition of Issue 1 regarding the remand of this case for a second reasonableness hearing. I concur with the majority on Issues 2 and 3 of this Opinion. Therefore, I would affirm the District Court's order as to Issues 1 and 2.

/S/ MICHAEL E WHEAT